### DIBRELL v. CENTRAL NAT. BANK OF SAN ANGELO. (No. 7085.)

Court of Civil Appeals of Texas. Austin.
March 23, 1927.

Rehearing Denied April 20, 1927.

1. Banks and banking ⬅➡280—Petition alleging breach of verbal contract by national bank to give 12 months' credit held demurrable as alleging agreement in violation of banking law (U. S. Comp. St. art. 9772).

Petition seeking recovery against bank for breach of oral contract to give 12 months' credit on purchase of live stock *held* subject to demurrer, since transaction or agreement alleged was in violation of U. S. Comp. St. art. 9772, and as to which parties stood in pari delicto.

2. Contracts ⬅➡138(1)—Courts will not enforce illegal contract requiring aid from illegal transaction to make out case.

Courts will not assist in any manner in enforcement of an illegal contract, where party seeking to enforce it requires any aid from illegal transaction to make out his case. ·

3. Frauds, statute of ⬅➡45(1)—Oral contract to pay for cattle and sheep 12 months after last sale, being one not to be performed within one year, held unenforceable (Rev. St. 1925, art. 3995, subd. 5).

Oral contract to purchase cattle and sheep and to pay for them in 12 months after last sale made on October 6, pursuant to which some of the cattle were purchased on October 9 and others a few days later, for which note was executed due May 1 of following year, with agreement that maturity should be extended to November 1, was not such contract as could be performed within space of one year and hence was unenforceable, under Rev. St. 1925, art. 3995, subd. 5.

---

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

4. **Evidence** ⬤➝441(11)—Parol evidence held inadmissible to show agreement for 12 months' credit for livestock for which note due in 6 months was executed.

Parol evidence *held* inadmissible to show agreement for 12 months' credit on purchase price of live stock for which note due in 6 months was executed, since such evidence would vary terms of written contract.

5. **Fraud** ⬤➝12—There can be no "actionable fraud" without misrepresentation of past or existing fact.

There can be no "actionable fraud" without misrepresentation of past or exsting fact or something equivalent thereto, since promising to do something in future cannot be both true and false at time when it is made, and failure to make it good is merely a breach of contract which should be enforced as a contract, if at all.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Actionable Fraud.]

6. **Contracts** ⬤➝139—Agreement to indemnify for damage caused by sale of sheep infected with scabies held enforceable, where parties were not in pari delicto (Vernon's Ann. Pen. Code 1916, art. 1267a).

Verbal agreement to indemnify purchaser of sheep for loss and damage caused by delivery of sheep infected with scabies *held* an enforceable contract, notwithstanding Vernon's Ann. Pen. Code 1916, art. 1267a, forbidding sale of sheep infected with scab where parties were not in pari delicto as to the illegal contract, in that purchaser was inexperienced in sheep business and sellers were experienced and knew that sheep were infected with scabies.

7. **Sales** ⬤➝51—Buyer of diseased sheep executing note therefor, after knowledge, in reliance on contract of indemnity cannot recover in action for fraud.

Where purchaser of sheep, after knowledge of their infection with scabies, executed note for purchase price in reliance on contract to indemnify him from resulting damages, he cannot recover damages in action ex delicto for fraud or tort in selling defective sheep, but must rely for recovery on such contract.

Appeal from District Court, Tom Green County; J. F. Sutton, Judge.

Action by Will C. Dibrell against the Central National Bank of San Angelo. Judgment of dismissal, and plaintiff appeals. Reversed and remanded.

Snodgrass & Dibrell, of Coleman, for appellant.

Collins, Jackson & Sedberry and James Cornell, all of San Angelo, for appellee.

BLAIR, J. Appellant sued appellee bank to recover $32,045.68 actual damages and $30,000 exemplary damages for breach of its contract to give appellant 12 months' credit on the purchase price of some cattle and sheep which he purchased from appellee, and for certain frauds and torts committed in connection with the sale and delivery of said live stock. A general demurrer and several general exceptions to appellant's petition were sustained, and upon his refusal to amend a judgment of dismissal was entered, from which this appeal is perfected.

The following statement by appellant of facts pleaded is substantially correct:

"That in October, 1922, he was in possession and control, under leases running to April 30, 1929, of 17,871 acres of grazing lands, located in Tom Green and Schleicher counties, Tex., which were suitably fenced, improved, and equipped and had ample grass, weeds, and water for the grazing and handling of a large number of cattle and sheep, and which were then understocked and clean and free of contagious and infectious live stock diseases.

"That appellant was inexperienced in the sheep business, and wholly unacquainted with the sheep disease known as scabies, and did not possess sufficient knowledge to be able to detect said disease in sheep. That appellee's managing officers were fully informed of all said facts before dealing with appellant.

"That about October 6, 1922, appellee verbally agreed with appellant that, if appellant would buy cattle and sheep from appellee to stock his ranches, appellee would credit him for the purchase price for a period of 12 months, with interest at 8 per cent. per annum, but that on account of banking rules he should execute his note due in 6 months, and that at its maturity the bank would take his renewal note for another 6 months and thus give him 12 months' credit. It was also then agreed that appellant would buy the John Sheen cattle at $30 per head, with calves thrown in, and would go with appellee's officers to look at such sheep as the bank wished to sell, and when he had completed buying sheep and deliveries were made he would then execute one note and chattel mortgage covering total price of all the live stock bought to be due in 6 months after its date, and that the bank would take a renewal note of said indebtedness at its maturity for another 6 months. Under said agreement, appellant about October 9, 1922, bought from the bank 1,196 head of sheep known as the Jim Craig sheep, for $6,456, and a few days later he bought from the bank 1,494 head of sheep known as the Robbins sheep, for $8,326, and 42 bucks known as the Tom Adams bucks, for $630. A few days later the bank delivered the Jim Craig sheep into appellant's clean pastures where they were mixed and mingled with the other sheep. Shortly after it was discovered that said Jim Craig sheep were infected with scabies in advanced stage of development and a quarantine was declared. Though appellant had examined the sheep at time of purchase, he had not discovered their diseased condition and was wholly ignorant of their infection until after the sheep had been delivered on his ranch and mingled with the other sheep purchased.

"The appellee bank's officers and agents were experienced sheep men, and knew that the Craig sheep had been exposed and were infected with scabies at the time the sale and

delivery was made to Dibrell, and purposely concealed the fact from him.

"That appellee bank, in making the promise of 12 months' credit at 8 per cent., acted fraudulently and deceitfully for the purpose of inducing appellant to buy the cattle and sheep from said bank in that, at the time of making said promise, the appellee intended not to perform it, but to wholly disregard it; that said promise was the inducing cause of Dibrell making purchases from the bank; that he relied thereon, and did not and could not discover that said promise was a fraud and deceit until April, 1923, when appellee repudiated its credit agreement.

", "That after discovery of the diseased condition of said sheep, appellant executed a 6-month note and chattel mortgage upon the further express contract of the bank that it would pay all loss and damages caused Dibrell by said disease and infection.

"That thereafter in April, 1923, appellee notified appellant to liquidate and that it would not accept a renewal of his note at its maturity, but would insist on payment. Dibrell did not have and could not then borrow money from other sources to pay his indebtedness because his pastures were in quarantine and his sheep infected with scabies; and he was so financially involved and embarrassed on account of such quarantine and scabies that he could not obtain outside financial aid, nor engage in litigation with appellee to compel performance of its agreement, and he was compelled to accede to the bank's demand for liquidation, and he did sell his live stock at a sacrifice in order to pay appellee, and did thus pay appellee long before the expiration of the 12 months' credit period agreed upon."

Other facts pleaded and necessary to a decision herein will be stated in the opinion.

We also adopt appellant's analysis of the grounds upon which his petition discloses that he sues, as follows:

"(1) To recover for breach of verbal contract to give 12 months' credit on purchase price of live stock.

"(2) To recover in action ex delicto for fraud and deceit in making promise of 12 months' credit on purchase price of livestock, with concurrent intention of nonperformance.

"(3) To recover for breach of contract to pay all loss and damage caused by sale and delivery into appellant's clean pastures of sheep infected with scabies.

"(4) To recover in action ex delicto for fraud and tort, committed by appellee in selling and delivering to appellant in his clean pastures sheep infected with scabies."

[1] To that portion of the petition which seeks a recovery for breach of the verbal contract to give 12 months' credit on the purchase price of the live stock, the court correctly sustained the general demurrer and several of the general exceptions. The general demurrer should have been sustained because the transaction or agreement alleged was clearly violative of the federal banking laws and as to which the parties stood in pari delicto. It is alleged that appellee bank agreed to credit appellant for the purchase

price of the livestock for 12 months, "but that on account of banking rules plaintiff should execute his note due in 6 months, and that at its maturity defendant would take his renewal note for another 6 months and thus give plaintiff twelve months' credit."

It is further alleged that the note was "merely executed by plaintiff in part performance of his verbal contract with defendant for the use of defendant in the conduct of its banking business, and with the full understanding between the parties that the real and subsisting contract between the plaintiff and defendant was an original verbal contract for 12 months' credit on the purchase price of all the live stock purchased, and that said papers were being executed in order to enable to make necessary legal showing of its assets to the bank supervising authorities."

There is no allegation of fact which would show appellant blameless, or that he was an innocent victim to the illegal contract, but the contrary appears, for it is alleged that the note was executed purposely and "with the full understanding between the parties that the real and subsisting contract" was "for 12 months' credit," and that the note was executed to enable appellee "to make necessary legal showing of its assets to the bank supervising authorities." To prove these allegations of his petition it would necessarily require appellant to show that he had, "with full understanding," contracted in violation of the provisions of article 9772, U. S. Comp. St., which makes it a crime punishable by imprisonment for any bank officer to make, or for any other person to aid him to make, any false statement of the assets of the bank to the supervising authorities.

[2] The rule is well settled in this state that courts will not assist in any manner the enforcement of an illegal contract, where the party seeking to enforce requires any aid from the illegal transaction to make out his case. Hall v. Edwards (Tex. Com. App.) 222 S. W. 167; Read v. Smith, 60 Tex. 379; Beer v. Landman, 88 Tex. 450, 31 S. W. 805; Wiggins v. Bisso, 92 Tex. 219, 47 S. W. 637, 71 Am. St. Rep. 837; Frost v. Plumb, 40 Conn. 111, 16 Am. Rep. 18; 2 Elliott, Con. 1061; McBlair v. Gibbes, 17 How. 232, 15 L. Ed. 132; Stone v. Robinson (Tex. Com. App.) 234 S. W. 1094; Oliphant v. Markham, 79 Tex. 547, 15 S. W. 569, 23 Am. St. Rep. 363; Raywood Co. v. Erp & Wright, 105 Tex. 161, 146 S. W. 155.

[3] The general exception, that, under the allegation of facts, the oral contract to purchase the live stock, and to pay for them in 12 months after the last sale is completed, appears to be in contravention of the statute of frauds, was also properly sustained. It is alleged that the contract to purchase the cattle and sheep and to pay for them in 12 months after the last sale was completed was made October 6, 1922; that pursuant to the contract appellant purchased some of the cat-

tle on October 9, 1922, and other cattle and sheep a few days later; and that still later and after the purchases were completed, on November 1, 1922, appellant executed his note, due May 1, 1923, in payment of the live stock, with the agreement that at its maturity it would be extended six months, or to November 1, 1923. It is therefore clear that the contract, alleged and sought to be enforced, could not "be performed within the space of one year from the making thereof," and the enforcement of it is inhibited by article 3995, subd. 5, R. S. 1925. Necessarily more than "one year" elapsed from the date of the contract October 6, 1922, to November 1, 1923, the date on which appellant alleged that he was to pay for the live stock.

In the case of Rease v. Clarksville Cotton Oil Co. (Tex. Civ. App.) 248 S. W. 434, it is held:

"The language of the clause has the effect of expressly 'limiting,' as stated in Bateman v. Maddox, 86 Tex. 546, 26 S. W. 51, 'both the time of commencement and continuance' of the agreement such as it prohibits the enforcement of. The 'one year' begins and is to be computed 'from the making of it,' the agreement. Consequently, such a contract as the one here in suit is within the terms of the statute. 2 Elliott on Contracts, par. 1179; Moody v. Jones (Tex. Civ. App.) 37 S. W. 379; Publishing Co. v. Moore, 46 Tex. Civ. App. 259, 101 S. W. 867."

The contract in that suit was one of employment for a period of one year and was made August 5, 1920, but it was agreed at the time that Reese was to have a few days in which to arrange his affairs before he commenced work, and his actual services commenced on August 23, 1920. It was held "performance commenced" on August 23, 1920. To prove his allegations, appellant would have to show that the contract was made October 6, 1922, that "performance commenced" October 9, 1922, and that final performance payment of the purchase price as agreed would not be completed until November 1, 1923, which is more than "one year from the making" of the contract. See, also, Tunstall v. Clifton (Tex. Civ. App.) 49 S. W. 244.

[4] The trial court correctly sustained the general exception, invoking the parol evidence rule to the alleged parol contract to give 12 months' credit on the purchase price of the live stock, as varying the terms of the written contract, the note, which fixed the time of payment at 6 months after its date.

From 22 Corpus Juris, p. 1095, we quote the following rule:

"It cannot be shown that the time for the payment of the obligation as agreed upon by the parties is different from the date of maturity as appearing in the instrument, or that there was an agreement at the time of making the note that it would be renewed at maturity, or might be paid off in installments."

This rule has the universal sanction of courts. The following Texas cases sustain it: Reid v. Allen, 18 Tex. 241; Rockmore v. Davenport, 14 Tex. 602, 65 Am. Dec. 132; Hendrick v. Chase Furn. Co. (Tex. Civ. App.) 186 S. W. 277; Jackson v. Bank (Tex. Civ. App.) 46 S. W. 295; Crooker v. National Phonograph Co. (Tex. Civ. App.) 135 S. W. 647; Dolson v. DeGanahl, 70 Tex. 620, 8 S. W. 321; Long v. Riley (Tex. Civ. App.) 139 S. W. 79; Self v. King, 28 Tex. 552.

Appellant contends that the parol evidence exception should not have been sustained, because he alleged "a more comprehensive agreement" in connection with the execution of the note and of which the note was only an incident or part. But no such an agreement was alleged. Appellant alleged a very simple agreement to purchase certain cattle and sheep, and to pay for them by executing his note, due 6 months after date; which was done. Now he seeks to vary the terms of that written instrument by showing a parol agreement to renew the note and extend the time of its payment 6 months after the time fixed therein, which, we submit, cannot be done under the well-settled rule inhibiting proof "that there was an agreement at the time of making the note that it would be renewed at maturity." We also submit that the contract alleged is not divisible, but simply one contract to purchase and pay for certain live stock, which agreement to pay was reduced to writing. It is true that a part only of the contract was reduced to writing, and that some parts not inconsistent with the writing were not reduced to writing. But the rule that those not inconsistent parts may be shown by parol is not applicable here, for the reason that the stipulation of the parties about the matters in controversy and that which appellant seeks to contradict or vary were put in writing. Coverdill v. Seymour, 94 Tex. 1, 57 S. W. 37; Hendrick v. Chase Furn. Co., supra.

[5] To the second cause of action, "to recover in action ex delicto for fraud and deceit in making the promise of 12 months' credit on purchase price of live stock with concurrent intention of nonperformance," the trial court correctly sustained the general exception, which, in effect, was that there can be no actional fraud without misrepresentation of a past or existing fact, or something equivalent thereto. Appellant merely alleged that appellee promised to give 12 months' credit, with the intention at the time of not performing the promise. No other fact or circumstance was alleged upon which the alleged fraudulent or deceitful promise was made other than that appellee failed to perform the promise.

In 12 Ruling Case Law, 254, the rule governing this question is well stated as follows:

"Since a fraud must relate to facts then existing or which have previously existed, the general rule is that fraud cannot be predicated upon statements promissory in their nature and

relating to future actions, nor upon the mere failure to perform a promise, or an agreement to do something at a future time, or to make good subsequent conditions which have been assured. Nor, it is held, is such nonperformance alone even evidence of fraud. Reasons given for this rule are that a mere promise to perform an act in the future is not, in a legal sense, a representation, and a failure to perform it does not change its character. Moreover, a representation that something will be done in the future, or a promise to do it, from its nature, cannot be true or false at the time when it is made. The failure to make it good is merely a breach of contract, which must be enforced by an action on the contract, if at all."

The principle of this rule has been applied by our courts in the following and many other cases: Bigham v. Bigham, 57 Tex. 238; Mid-Continent Life Ins. Co. et al. v. Pendleton (Tex. Civ. App.) 202 S. W. 769; Lone Star Life Ins. Co. v. Shield, (Tex. Com. App.) 228 S. W. 196; Chicago T. & M. C. Ry. Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39.

The rule seems to be well settled in this state that equitable relief, such as rescission or cancellation, might be had because of a fraudulent promise made as an inducement to a contract with no intention to perform; still it is as well settled that no recovery of damages may be had where the petition merely alleges that the promise was made with no intention to perform, and where the only other fact alleged in connection therewith is the mere failure to perform. The reason for the rule is that a promise to do something in the future cannot be both true and false at the time when it is made, and that the failure to make it good is merely a breach of contract, which should be enforced as a contract, if at all.

[6] To the third cause of action, which seeks "to recover for breach of the contract to pay all loss and damages caused by sale and delivery into appellant's clean pastures of sheep infected with scabies," the trial court sustained a general exception upon the ground that the transaction alleged was illegal, and as to which the parties are in pari delicto, because article 1267a, Texas Penal Code (omitted from 1925 Codification) makes it "unlawful for any person, firm or corporation to sell or buy any sheep affected with scab," and for violation of which the law prescribed a penalty. The court erred in sustaining this exception, because under the allegations of fact the parties are not in pari delicto to the illegal transaction. Appellant alleged that he was inexperienced in the sheep business and as to any infectious diseases they might have, that appellees' officers were experienced and knew that some of the sheep sold to appellant were infected with scabies, but that, notwithstanding that knowledge, fraudulently concealed the fact and delivered the scabby sheep into appellant's clean pastures, where they mingled with appellant's other sheep and exposed them to the disease. That he discovered the diseased condition of the sheep after their delivery, and a quarantine was declared; that, under the circumstances, the sheep could not be removed; that at the time he discovered the fraud appellee had delivered all the cattle and sheep under the contract; and that he refused to execute the note until appellee verbally agreed to pay all loss and damages caused by the sale and delivery of the diseased sheep.

Under such circumstances, it would be unfair and unjust to hold appellant in pari delicto with appellee with reference to the illegal sale and delivery of the scabby sheep, and the case comes clearly within the following rule found in 13 Corpus Juris, p. 498, § 442b:

"Where the parties to a contract against public policy or otherwise illegal are not in pari delicto, or equally guilty, which they may not be, and where public policy is considered as advanced by allowing either, or at least the more excusable of the two, to sue for relief against the transaction, relief is given to him. The cases of this character are generally where the party asking to be relieved from the effect of an illegal agreement was induced to enter into the same by means of fraud. Here he is not regarded as being in pari delicto with the other party, and the court may relieve him." Futch v. Sanger (Tex. Civ. App.) 163 S. W. 597; Coons v. Lain (Tex. Civ. App.) 168 S. W. 981.

Since the parties are not in pari delicto as to the illegal contract, the verbal agreement to indemnify against the consequences is an enforceable contract, and the trial court should not have sustained either the general demurrer or general exception thereto. 13 C. J. 498, note 28.

[7] To the fourth cause of action, or "to recover in action ex delicto for fraud and tort committed by appellee in selling and delivering to appellant in his clean pastures sheep infected with scabies," the court correctly sustained a general exception that appellant "waived" the cause of action because his petition alleges that he executed the note with full knowledge of the fraud and tort. Or whether appellant "waived," as that term is legally understood, the cause of action for fraud and tort, by agreeing to carry out the contract if appellee would pay the resulting damages then accrued and to thereafter accrue from the fraud and tort committed, is immaterial, since he must recover on the contract in settlement of the fraud and tort committed, or not at all. That is, appellant did not waive, in the sense that that term is legally used, the fraud and tort committed, but simply contracted against them, and it is the contract that he must enforce under his pleadings.

We reverse the judgment of the trial court and remand the cause for trial in accordance with this opinion.

Reversed and remanded.