## VICK v. DOWNING et al.

### No. 1822.

Court of Civil Appeals of Texas. Eastland.

Sept. 16, 1938.

Rehearing Denied Oct. 21, 1938.

Lyndsay D. Hawkins, of Breckenridge, for appellant.

Robert E. Bowers, of Breckenridge, for appellees.

FUNDERBURK, Justice.

Maude E. Vick as guardian of the estate of R. R. Todd, non compos mentis, by this suit, as shown by her Second Amended Original Petition, sought recovery against A. H. Downing and B. R. Grant upon a promissory note, dated June 12, 1932, for the principal sum of $1580, payable to R. R. Todd and executed by said defendants, together with one R. A. Todd, as co-makers. In the alternative, recovery was prayed upon a $1580 note dated June 12, 1930, executed by the same parties to the said R. R. Todd, of which the first named note was a renewal. R. A. Todd was not sued, it being alleged that he was a non resident and notoriously insolvent. (The alternative claim upon the original note

seems to have been made in response to a ruling of the court upon an exception, to the effect that the defendants were not shown to be liable upon the renewal note for the reason it was not alleged that the renewal of the original indebtedness, or evidence thereof, was authorized by an order of the probate court.)

Said A. H. Downing and B. R. Grant defended principally on the ground that one M. M. Carey, as the authorized agent of R. R. Todd, payee in the original note (as also in the renewal note), committed fraud against them by means of false representations and concealments which induced them to sign the note as accommodation makers, with said R. A. Todd. Plaintiff countered with the plea that R. R. Todd was of unsound mind and without sufficient legal capacity to constitute Carey an agent, by whose fraud, if any, R. R. Todd could legally be bound.

The case was submitted to a jury on special issues. The issue of the mental incapacity of R. R. Todd at the time of the execution of the first note, although submitted, was not answered. Issues were answered, the findings whereof were to the effect that on June 11th or 12th, 1930, R. R. Todd constituted M. M. Carey as his agent to procure the signatures of A. H. Downing and B. R. Grant on the note, for money to be loaned R. A. Todd; that M. M. Carey stated to A. H. Downing and to B. R. Grant just before the note of June 12, 1930 was signed by them that R. A. Todd owned one hundred head of white face cattle and that such cattle would be sufficient security to (each of) them for signing said note; that such statements were believed and relied upon by each of them; that R. A. Todd did not own one hundred head of white face cattle; that neither A. H. Downing nor B. R. Grant in executing and delivering the renewal note of June 12, 1932, intended to waive fraud on the part of M. M. Carey in obtaining their signatures to the original note.

Upon such verdict the court gave judgment for the defendants, from which the plaintiff has appealed.

■ We are of the opinion that the trial court was in error in sustaining the exception of defendants to plaintiff's First Amended Original Petition on the ground that it omitted any allegation to the effect that the renewal of the former note was authorized by an order of the probate court. It is true, Art. 4211, R.S., in part provides that "No guardian shall renew any indebtedness or evidence thereof except by order of the court made upon application and notice as in case of sales of land." The character of debt thus referred to is clearly disclosed by the context. The article deals with estates "in the hands of a guardian * * * involved in debt" and provides a procedure by which, and circumstances under which, a "guardian can discharge existing debts"—meaning necessarily debts due from the estate to others—by executing mortgages and deeds of trust to secure persons furnishing the money to discharge such debts. Only a debtor can renew an indebtedness, or the evidence thereof. The creditor can only accept or offer to accept or to reject a proposed renewal. Article 4212 refers to the same character of debt as Art. 4211, and apparently specifies a particular condition under which the guardian may renew an indebtedness, or evidence of an indebtedness, without an order of the court. It is our view that neither article has any reference to an indebtedness due to an estate in guardianship.

Since the Second Amended Original Petition contains substantially the same allegations with reference to the renewal note as the pleading to which the exception was sustained and prayed recovery thereon primarily, the error in sustaining the exception seems to have been rendered harmless. In the trial of the case no effect seems to have been given, by the exclusion of evidence or otherwise, to the view manifested by the former action in sustaining the exception.

■ It is contended by appellees that plaintiff showed no right to recover because the guardianship proceeding was void. Such attack upon the validity of the guardianship proceeding is, of course, collateral. Being so, it was necessary, in order to hold the proceeding void, that its invalidity affirmatively appear upon the face of the record. The County Court as a probate court is a court of general jurisdiction. It has the general jurisdiction to adjudge persons of unsound mind and appoint guardians for their estates. The judgment appointing the guardian appears to be challenged in one respect only, and that is that the order of the court adjudging the said R. R. Todd to be of unsound mind stated that "R. R. Todd is a person of unsound or weak mind to the extent that he is not capable of properly managing and

handling his estate." The language of the order may be concededly ambiguous, but to us it seems clear that it does not affirmatively disclose that the court did not adjudge that R. R. Todd was of unsound mind within the meaning and spirit of the law authorizing the appointment of a guardian of his estate.

The issue of fraud urged by appellees as a defense against the note presents some interesting questions. We are inclined to the view that neither the pleadings nor evidence showed the commission of any fraud by R. R. Todd, the payee in the note, which would defeat liability of the defendants. Legally R. R. Todd was not interested in having the defendants sign the note as co-makers with R. A. Todd, to whom the principal amount of the note was being loaned in money. R. R. Todd was only interested in the note being signed by solvent makers. R. A. Todd was the person interested in procuring the signatures of accommodation co-makers. The interests of R. R. Todd and R. A. Todd were in a sense adverse. All of the evidence which must be relied on to show that M. M. Carey, in the representations he is charged with having made, did so as the authorized agent of R. R. Todd, is more consistent with the view that, in that particular matter, he was acting in aid of R. A. Todd. Whose interest but R. A. Todd's was M. M. Carey serving when, because of an objection to the note made by one of the defendants, he went to a lawyer's office and had a note prepared to meet such objection? There is no evidence that in doing so he was representing the interest of R. R. Todd and the same is equally true of the representations claimed to constitute fraud.

In our view, however, the question of the agency of M. M. Carey as the basis of avoiding liability on the note on the ground of fraud in procuring the original note, is rendered of little practical importance because of the circumstances attending the execution of the renewal note, and the fact that under our view the plaintiff was entitled to recover upon the renewal note. The defendants admit that very shortly after the execution of the original note they knew the facts concerning the alleged fraud. With such knowledge they made payments upon the original note. Thereafter when the guardian demanded payment or a renewal of the note they executed the renewal note thereby, among other possible advantages, securing an extension of time in which to pay the debt.

Can a party to a contract, entitled to avoid liability thereon because of fraud in the nature of false representations made by the other party inducing its execution, make new promises upon additional legal consideration after having full knowledge of the original fraud, and thereafter defeat liability to perform the new promises solely on the ground of the fraud which induced the original contract? We think not. The question is not merely one of the waiver of fraud. There can be no available legal defense based upon fraud when the facts concerning the fraud become fully known before the contract is executed. Such was the situation when the note (contract) in suit was executed. The consideration supporting the promises in the original note, as shown by the undisputed evidence, was the loan of $1580 by R. R. Todd to R. A. Todd, but the note in suit is supported by an additional consideration consisting of the extension of time to pay the debt. This was a consideration of which defendants, together with R. A. Todd, were direct beneficiaries, instead of merely indirect as in the original note.

It would not be contended that if the defendants had learned that the alleged representations of Carey were false before they signed the original note the defense of fraud based upon such representations would have been available to defeat their liability. But, except as to the time of payment, defendants, with full knowledge of the fraud, promised in writing unconditionally to pay the debt, the same as they promised in the original note. There was no fraud alleged or proved as inducing the execution of the renewal note. There is no question of the promise being supported by sufficient consideration to constitute a contract. Under these circumstances we think that as a matter of law the defense of fraud was not available to defeat liability.

This result was sought to be avoided by a finding in favor of the defendants of an issue to the effect that by the execution of the note defendants did not intend to waive the defense of fraud. This issue of intent is not believed to be material. Strictly and accurately speaking, it seems to us not a question of the waiver of fraud or the waiver of a defense on account of

282

fraud, but rather under the undisputed facts fraud was eliminated from the contract consisting of the renewal note. If there was no fraud in the transaction then manifestly there was no fraud to be waived. To give effect to the claim of an intention not to waive the fraud by the execution of the note in suit would be the same as permitting the defendants to deny that they promised unqualifiedly to pay the debt as expressed in the note. The contention of the appellees upon this point in its final analysis would seem to mean that while they promised unqualifiedly in writing to pay R. R. Todd $1580. as specified in the note, they had an intention expressed to the guardian not to pay said debt, and now ask that effect be given to that intention to the contradiction and nullification of their written promise. In our opinion, to permit such a defense would be to deny in its spirit and purpose the operation of the principle upon which is founded the rule which forbids the contradiction of the terms of a written instrument by proof of a parol understanding.

It is our conclusion that the judgment of the court below should be reversed and judgment here rendered for plaintiff for the amount of principal, interest and attorney's fees on said note of June 12, 1932. It is accordingly so ordered.