**SANTA ANA CITRUS GROVES, Inc., et al. v. FIRST NAT. BANK OF CHICAGO.**

No. 10906.

Court of Civil Appeals of Texas. San Antonio.

Feb. 19, 1941.

Rehearing Denied April 2, 1941.

October 10, 1933. In this conveyance, the superior legal title and an expressed vendor's lien were retained to secure the payment of four purchase money notes aggregating the sum of $32,500. These notes were also secured by a deed of trust executed by Santa Ana Citrus Groves, Inc., to Roy P. Conway, trustee. The purchase money notes, together with superior legal title to the property and the liens securing payment of said notes, were all assigned and transferred by Willard to the Chicago bank.

On February 14, 1940, the notes being unpaid, the bank, as plaintiff, brought suit against the Santa Ana Citrus Groves, Inc., Santa Ana Groves Corporation, Dr. Mary A. Miller, Dr. Ann Rinehart, Helen King Maxwell, and certain other parties who filed disclaimers, asserting its superior legal title to the premises by way of an action of trespass to try title. The petition also contained an alternative count praying for judgment upon the notes and a foreclosure of the vendor's lien.

The individual defendants above named pleaded that they had been induced to place their money into a proposed corporation (Santa Ana Citrus Groves, Inc.) and through such corporation (after its formation) to purchase the lands involved by means of fraudulent representations made to them by the agents of the plaintiff bank. The individual and corporate defendants prayed for judgment over against the bank, and that the damages sustained be offset against the indebtedness represented by the notes held by plaintiff. After a trial to a jury, a peremptory instruction was given and judgment rendered for plaintiff upon its count in trespass to try title. The defendants (other than those who disclaimed in the court below) bring the case here.

R. M. Bounds and Roy Buckley, both of McAllen, for appellants.

Oliver C. Aldrich and Felix L. McDonald, both of Edinburg, for appellee.

NORVELL, Justice.

This is a "land fraud" case. The real property involved is a tract of approximately 1,900 acres situated on the Rio Grande in Hidalgo County, Texas. This property was conveyed by Clifford Guy Willard (who was acting as trustee for the First National Bank of Chicago) to Santa Ana Citrus Groves, Inc., by deed dated

Appellants assert that the judgment rendered against Helen King Maxwell and Dr. Ann Rinehart should be reversed, as appellee failed to connect said parties with its pleaded common source of title, to-wit: Clifford Guy Willard. This contention must be overruled, as the pleadings of said appellants show that all claim of title which they may have possessed grew out of the transaction which resulted in the conveyance of property by Willard to Santa Ana Citrus Groves, Inc. As this was shown by the pleadings of said parties, it was unnecessary for appellee to introduce evidence connecting them with the common

312

source of title. Moran v. Stanolind Oil & Gas Co., Tex.Civ.App., 127 S.W.2d 1012; Luckel v. Sessums, Tex.Civ.App., 71 S. W.2d 579.

Appellants assert that the case should have gone to the jury. In our opinion, the uncontradicted evidence shows that appellants are precluded from asserting any right they may have had to offset or abate the purchase money notes. This makes necessary an affirmance of the judgment of the court below for the following reasons:

■■ Appellants pleaded that the property involved was represented to them as being suitable for subdivision into small tracts for homesites and citrus growing purposes; that such representations were false in that said lands were subject to periodical overflows by the Rio Grande. The appellee bank pleaded the two and four year statutes of limitations. Arts. 5526 and 5527, Vernon's Ann.Civ. Statutes. It is well settled that in fraud actions "limitation begins to run from the time of the discovery of the fraud, or from the time it might have been discovered by the use of reasonable diligence." Glenn v. Steele, Tex.Sup., 61 S.W.2d 810. The evidence shows conclusively that on or before June 12, 1935, appellants discovered that the property was subject to periodical overflows by the Rio Grande. It follows, therefore, that all causes of action which appellants may have had against the appellee by reason of the alleged fraud were barred either by the two or four year statutes of limitation prior to the time appellants' petition was filed, except the right to an abatement of the unpaid purchase money notes under the holdings of Mason v. Peterson, Tex.Com.App. (holding approved by the Supreme Court), 250 S.W. 142.

It appears that after the property involved had been conveyed to Santa Ana Citrus Groves, Inc., that corporation executed a deed of trust to secure an indebtedness due appellant Dr. Mary A. Miller. Upon default the property was sold at trustee's sale to appellant Dr. Miller, who in turn conveyed the same to a second corporation known as Santa Ana Groves Corporation which was dominated and controlled by her.

On March 7, 1936, almost a year after appellants were in possession of facts charging them with knowledge of the alleged fraud complained of, Santa Ana Groves Corporation (the then record owner of the property), Dr. Mary A. Miller and First National Bank of Chicago entered into a written agreement which provided for an extension of the time of payment of the notes held by the Chicago bank under certain terms and conditions. It was recited that the time of payment of the notes had been previously extended by a prior agreement, dated April 5, 1934, and that said notes were secured by "a valid and subsisting lien on the premises."

Dr. Miller and her corporation agreed to pay all accrued interest on the indebtedness at the rate of four per cent per annum from April 4, 1935, to December 1, 1935, and thereafter pay interest semi-annually at the same rate. They further agreed to pay all back taxes on the property, as well as all subsequent taxes when they became due. The bank agreed to extend the time of the payment of all of the notes for a period of eighteen months from December 31, 1935. The bank also obligated itself to a further extension of the times for payment of the notes, provided the corporation or Dr. Miller expended the sum of $7,500 in improving the property during the eighteen-month period. It was further agreed that the principal of the indebtedness could be discharged by a payment of $10,000 less than the face amount thereof if paid on or before the time specified in the agreement of extension, provided that the value of the property had not increased because of the discovery of oil thereon in the meantime.

This extension agreement also contained the following provisions:

"It is expressly agreed by the Parties hereto that all of the covenants and agreements in said principal notes and said Deed of Trust shall be and remain unchanged and in full force and effect during such extended period, except as hereby changed.

"It is expressly agreed and understood by the Parties hereto that in the event default is made in any of the provisions of this agreement, the rights of the parties hereto shall immediately revert to and be governed by all of the covenants and agreements in said principal notes and said Deed of Trust contained."

It is appellants' contention that the paragraphs above quoted rendered the agreement "optional in nature"; that as the corporation and Dr. Miller did not comply with the provisions thereof and as a consequence the bank asserted its rights under "all the covenants and agreements in said

principal notes and said deed of trust contained," the extension agreement was ineffective and should be disregarded for any purpose.

This view of the contract can not be sustained. The extension agreement was based upon a valid consideration. It was in no sense unilateral. Appellee's rights asserted here are in conformity with the express terms of the extension agreement. The fact that Dr. Miller and her corporation failed to comply with the covenants which they obligated themselves to perform, in order to secure the maximum benefits accruing to them under the agreement, can not avoid the legal effect thereof, which was to affirm and acknowledge the legality and enforceability of the debt due to the Chicago bank.

From what has been said, it follows that the trial court properly instructed the jury to return a verdict for the appellee. Braxton v. Haney, Tex.Civ.App., 82 S.W.2d 984, writ refused, and authorities cited therein.

The judgment of the trial court is affirmed.