**B & R DEVELOPMENT, INC.,**
**Appellant,**

v.

**Yandell ROGERS, Jr., Appellee.**

No. 8487.

Court of Civil Appeals of Texas, Texarkana.

Dec. 6, 1978.

Rehearing Denied Jan. 31, 1978.

Marion L. Massey, King & Massey, Inc., Fort Worth, for appellant.

Franklin H. Perry, Thompson, Coe, Cousins & Irons, Dallas, for appellee.

CORNELIUS, Chief Justice.

B & R Development, Inc., brought suit against Yandell Rogers, Jr., to recover $20,070.00 which allegedly represented an overpayment for land which B & R and its associate Whitmire had purchased from Rogers. The petition alleged that B & R and Whitmire agreed to purchase the land, by the acre, for a consideration of $3,000.00 per acre, and that upon Rogers' fraudulent and false representations that the land contained 90 acres, they paid $270,000.00 therefor, whereas in fact the land contained only 83.31 acres. The prayer sought actual damages of $20,070.00 representing the acreage deficiency at $3,000.00 per acre, plus exemplary damages of $20,000.00. Trial was to a jury which found, inter alia, that Rogers'

agent represented to B & R that the tract contained 90 acres and that it fronted 3628.8 feet on Union Church Road; both representations were false; B & R did not know the representations were false but relied upon them in agreeing to purchase and pay for the land; the sale was a sale by the acre rather than a sale in gross; and by reason of the misrepresentations, B & R was damaged in the sum of $20,070.00. Nevertheless, the district court allowed a recovery of only $8,685.00 because, based on the documentary evidence produced at the trial, B & R owned only a fractional interest in the land, the remaining interest still being owned by B & R's associate Whitmire. B & R moved to reopen the trial for the purpose of proving that it had purchased Whitmire's interest, but the district court denied the motion.

On appeal B & R complains of the trial court's action in awarding it a judgment for only $8,685.00 rather than for the full $20,070.00; in refusing to allow a reopening of the trial to permit proof of the assignment from Whitmire to B & R; in allowing Rogers an offset for some 9/10ths of an acre which was encumbered by a road easement; and in refusing to award interest on the recovery. We find it unnecessary to pass upon these contentions, however, as we have concluded that we must sustain Rogers' cross-point which urges that B & R's cause of action was barred or waived as a matter of law because after B & R discovered the acreage deficiency and had full knowledge thereof, it renegotiated the transaction and executed renewal notes for the balance of the full amount of the purchase price.

The original purchase was consummated for an agreed price of $270,000.00 with $40,000.00 being paid down and the balance of $230,000.00 being financed by the execution of a promissory note payable to Rogers in three annual installments and secured by a deed of trust on the property. In May of 1973, several months after the original sale, B & R purchased Whitmire's undivided interest in the land. James Rust, the President of B & R and its agent in all of the transactions in question, testified that at the time of the purchase of Whitmire's interest he was aware that the land contained less than the 90 acres it was represented to contain. His knowledge was based primarily upon a surveyor's report which revealed that the frontage on Union Church Road was only 2640.32 feet rather than 3628.8 feet as Rust testified had been represented by Rogers. Thereafter, in June of 1973, at the request of B & R, the financing was renegotiated with Rogers. As a result, Whitmire was omitted as an obligor, an additional $30,000.00 was paid toward the $270,000.00 purchase price, and the balance of $200,000.00 was financed by a note payable to Rogers in two annual installments and secured by the pledge of certain certificates of deposit. Rogers' deed of trust lien was released. At about the same time, B & R executed a deed of trust to the Fort Worth National Bank covering the 90 acres, to secure a new loan it had obtained for $383,000.00. The same land description and acreage figures were used in that deed of trust as were used in the original papers. Concerning his knowledge of the acreage deficiency at the time the new financing papers were executed, Mr. Rust testified as follows:

"Q Just a minute, Mr. Rust. If my memory serves me, Mr. Thompson said that he completed this survey in June of 1973.

A Yes.

Q Would that have been the time that you knew that you had less than 90 acres?

A I believe we knew we had less than 90 acres prior to that when his men were working on the topo.

Q But at any rate the day that the survey was completed you would have known?

A Well, the day the survey was completed I knew exactly how much land there was.

. . . . .

Q All right, sir. I guess the next thing that happened in this matter was that Mr. Thompson got out, or his

people went out there, and didn't they tell you that, sometime shortly before you bought Mr. Whitmire's interest in the land, they told you all the acreage wasn't there and all of the frontage wasn't there?

A  They didn't say all the acreage is not there. They just said the frontage is short. That's as far as they had gotten with their survey.

.    .    .    .    .

But you did say at that time, did you not, 'Well, we had bought this property and after we found out that the acreage was short, why, he—' And so forth and so on?

A  Yes, if you want to put it that way, that the acreage was short. We knew that it was short, the frontage. I didn't have the exact acreage at that time, but I had, I had anticipated it being short, the footage not being there. Yes, I will go ahead and say yes to that question, we knew that—or I knew—I'll put it I knew that it was short at that time.

Q  Well, you discussed it with Mr. Whitmire, too, didn't you?

A  I told Mr. Whitmire that the footage that Mr. Williams had told us was on Union Church Road was short.

Q  All right. And on Page 71, Line 22, you said:
'Question: Did you and Mr. Brinkley have some discussions about the shortage, about how that would affect your ability to buy him out and still come out on the development? Answer: Well, yeah, we discussed it. We discussed it.
Question: Did you feel like you could still develop it and still make enough money to justify buying out Mr. Whitmire?
Answer: Well, I'm sure we did or we wouldn't have bought him out.'

.    .    .    .    .

A  I didn't have a complete survey at that time, as Tommy testified earlier, but that frontage was short and I

will concede that I assumed and called it acreage short from the frontage being short. Yes, we will call it acreage short.

Q  Well, it's not a question of what we are calling it now, Mr. Rust. It's a question of what you said under oath at the time. Now, you did say—

A  Well, I am saying that the acreage was short, yes, and that I said under oath that it was short, yes."

Where one with knowledge of a fraud perpetrated on him in a prior transaction executes a renewal of his obligation, he thereby ratifies the original transaction and will not be permitted to plead the fraud. *Hunter v. Lanius,* 82 Tex. 677, 18 S.W. 201 (1892); *Gaylord Container Division v. H. Rouw Company,* 392 S.W.2d 118 (Tex.1965); *Anderson v. Pioneer Bldg. & Loan Ass'n.,* 163 S.W.2d 421 (Tex.Civ.App. Waco 1942, writ ref'd w.o.m.); *Vick v. Downing,* 120 S.W.2d 279 (Tex.Civ.App. Eastland 1938, no writ); *Braxton v. Haney,* 82 S.W.2d 984 (Tex.Civ.App. Waco 1935, writ ref'd). The rule is usually applied in actions to enforce or to rescind the transaction, but it applies as well to actions for damages or to recover the consideration paid for property purchased as a result of fraudulent misrepresentations. See *Shaw Equipment Co. v. Hoople Jordan Const. Co.,* 428 S.W.2d 835 (Tex.Civ.App. Dallas 1968, no writ); *Rawdon v. Garvie,* 227 S.W.2d 261 (Tex.Civ.App. Dallas 1950, no writ); *Fryar v. Forrest,* 155 S.W.2d 679 (Tex.Civ.App. San Antonio (1941), no writ); *Santa Ana Citrus Groves v. First Nat. Bank,* 149 S.W.2d 310 (Tex.Civ. App. San Antonio 1941, writ ref'd). See also *Dallas Farm Machinery Co. v. Minneapolis-Moline,* 324 S.W.2d 578 (Tex.Civ.App. Dallas 1959, no writ).

The undisputed evidence in this case shows that after discovery of the falsity of Rogers' representations as to the amount of acreage, B & R paid an additional $30,-000.00 of the original purchase price and executed renewals and extensions of the notes for the remaining balance thereof, in effect again agreeing to pay $270,000.00 for

the tract, though it contained less than the 90 acres represented. The legal effect of such renewal was to free the transaction from the fraud and to affirm and acknowledge the legality and enforceability of the obligation to pay the consideration agreed upon. *Anderson v. Pioneer Bldg. & Loan Ass'n.,* supra; *Santa Ana Citrus Groves v. First Nat. Bank,* supra.

B & R attempts to escape the rule announced by the authorities cited, contending that because its action was simply one for money had and received, rather than an action for recision or as a defense to an action on the obligation, those authorities do not apply.

█ When a deficiency in a sale by the acre is discovered, an abatement may be allowed as a defense *pro tanto* to an action by the vendor for the purchase price; or, if the price has been paid, the vendee can recover damages. See Comment, *Excesses And Deficiencies In Texas Land Sales,* 20 Texas L.Rev. 446 (1942), and cases there cited. Some cases have recognized that the vendee's action to recover a portion of the purchase price may be in the form of one for money had and received, but the remedy, whatever the form of the action, is governed by equitable principles of fraud or mutual mistake. 20 Texas L.Rev. 446 (1942). In this case, B & R made no allegation of mutual mistake, nor was there evidence of such. B & R's case was grounded upon fraud. The basis of its claim was misrepresentation. To have shown that Rogers had money which in equity and good conscience he should not retain, as is required in an action for money had and received, B & R must have established that Rogers misrepresented that the tract contained 90 acres, and that it paid $270,000.00 for the land upon that understanding. If B & R paid $270,000.00 for the land knowing that it contained less than 90 acres, it has not been misled and its cause of action, as pleaded, for money had and received necessarily fails. Although the jury found that the sale was by the acre, the confirmation of the bargain after discovery of the acreage shortage removed the elements of mistake or deception from the transaction, and effectively transformed it into a sale of the tract in gross.

█ As a defense to an action for money had and received, the defendant may show any facts which will entitle him to retain the money on either legal or equitable grounds. Thus, he may interpose any defense which shows that in equity and good conscience the plaintiff is not entitled to recover. *Red Ball Motor Freight, Inc. v. Bailey,* 332 S.W.2d 411 (Tex.Civ.App. Amarillo 1960, writ ref'd n.r.e.). As Rogers established that B & R executed new notes for the remaining balance of the full purchase price at a time when it knew it was getting less than 90 acres, there was no misrepresentation or deception and B & R had no right, in equity and good conscience, to recover money which it knowingly and voluntarily paid to Rogers.[1]

█ B & R sought to avoid this result by obtaining a jury finding that, by renegotiating the terms of payment of its debt it did not waive its claim for damages for the deficiency, but such finding cannot be deemed decisive. The jury issue was based upon the traditional concept of waiver, defined as "the intentional relinquishment of a known right." But the issue of intent to waive is not material. *Vick v. Downing,* supra. Strictly and accurately speaking, it is not waiver which has barred B & R's cause of action. It is simply that fraud has been eliminated from the transaction. See *Vick v. Downing,* supra; see also *Dibrell v. Central Nat. Bank,* 293 S.W. 874 (Tex.Civ. App. Austin 1927, writ dism'd). B & R received the bargain for which it contracted. There was no deception. If there was no deception, the basis of B & R's claim disappears.

For the reason stated, appellee's cross-point is sustained. The judgment of the district court is reversed and judgment is here rendered that appellant take nothing.

Reversed and rendered.

1. B & R had paid the entire $270,000.00 purchase price before trial.

## ON MOTION FOR REHEARING

In its motion for rehearing, B & R insists that a recovery in its behalf could be sustained upon the theory of mutual mistake if not upon the theory of fraud. Assuming for the purposes of argument that B & R's pleadings could be construed as alleging mutual mistake, the case was submitted to the jury and determined by it on the basis of intentional fraud. In any event, we remain convinced of the soundness of our ruling. As stated in our original opinion,

"If B & R paid $270,000.00 for the land knowing that it contained less than 90 acres, it has not been *misled* and its cause of action, as pleaded, for money had and received necessarily fails. . . . the confirmation of the bargain after discovery of the acreage shortage removed the elements of *mistake* or deception from the transaction, . . .". (Emphasis added.)

Whether based on fraud or mutual mistake, the basis of a cause of action in B & R's behalf must have been that it was misled—that it paid the agreed price for the land believing it was getting more than it received. The confirmation of the bargain with full knowledge of the facts removed any such basis.

The motion for rehearing is respectfully overruled.