# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 19, 2013

No. 12-10299

Lyle W. Cayce
Clerk

R&L INVESTMENT PROPERTY, L.L.C.,

Plaintiff - Appellant

v.

GUY HAMM; JOYCE HAMM; EARNEST UPCHURCH; KATHY HOBBS;
UPCHURCH CENTURY 21 REAL ESTATE, INCORPORATED,

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before REAVLEY, JOLLY, and SMITH, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The plaintiff-appellant, purchaser of real property, seeks only damages resulting from alleged fraudulent misrepresentations. We hold that the purchaser, with full knowledge of the alleged fraud, ratified the purchase and sale of the property. Such ratification foreclosed the purchaser's right to damages, because the purchaser received the benefit of its bargain. We thus AFFIRM.

No. 12-10299

R&L Investment Property, L.L.C. ("R&L") purchased property from Guy and Joyce Hamm (the "Hamms"), which their broker Upchurch[1] advertised as development-ready with an active waste-water permit. The Hamms, however, had allowed the permit to expire before the sale. In March 2007, R&L learned that the permit had expired, but nevertheless maintained possession of the property and continued making its required financing payments. R&L did not allege fraud on the part of the Hamms until it defaulted on the modified promissory note—the original note having been modified after R&L first defaulted in 2009—and faced foreclosure. On motion for summary judgment, the district court held that R&L's claims were foreclosed due to the modification of the promissory note, which the court found ratified the real estate sale, and granted judgment in favor of the Hamms and Upchurch. We agree and affirm.

I.

R&L purchased two tracts of property from the Hamms: the Lakefront Property and the Marina Property. Both are located in Hunt County, Texas. Upchurch was the broker for the transactions.

In advertising the Lakefront Property, a key marketing feature was that the property had an active waste-water permit. But, on March 1, 2006, the Hamms allowed the waste-water permit to expire. When R&L signed the *Commercial Contract – Unimproved Property* (the "*Land Sales Contract*") on June 19, 2006, it was operating under the false assumption that the Lakefront Property still had an active waste-water permit. R&L remained unaware of the permit's expiration at the Marina Property closing on September 8, 2006, and the Lakefront Property closing on September 29, 2006. At the Lakefront Property closing, the Hamms provided R&L with an envelope containing the expired waste-water permit. R&L asserts, however, that the Hamms still did

---

[1] Upchurch refers to defendants Earnest Upchurch, Kathy Hobbs, and Upchurch Century 21 Real Estate, Inc.

not disclose that the permit had expired. The fourth amended complaint states that R&L did not discover the fraud until March 8, 2007.

*A. Contracts related to the Lakefront Property*

There are a number of relevant contracts comprising the parties' transaction. The initial agreement, the *Land Sales Contract*, established the purchase price for the Lakefront Property as $2.4 million; $1.4 million was to be financed. Paragraph 4 indicated that the Hamms agreed to seller-finance the $1.4 million, stating that the "Buyer will finance the portion of the sales price . . . as follows . . . C. Seller Financing: The delivery of a promissory note and deed of trust from Buyer to Seller under the terms of the attached Commercial Contract Financing Addendum." Upchurch was listed as the broker for the sale. Paragraph 22(E) incorporated the *Commercial Contract Financing Addendum* (the "*Addendum*"), which listed the express financing terms. The *Addendum* stated that the promissory note would be payable:

> In the original principal amount of $1,400,000 bearing interest at the rate of 7% percent per annum payable in equal monthly principal and interest installments of $25,000 with interest accruing from date of Note and first principal and interest monthly installment commencing six (6) months after date of Note and continuing regularly and monthly for five years after date of Note when the entire principal and accrued interest balance of the Note shall mature and be due and payable.

R&L signed the promissory note for the Lakefront Property, the *Real Estate Lien Note*, at the September 29, 2006 closing. The *Real Estate Lien Note* restated the terms contained in the *Addendum*, requiring 54 equal monthly installment payments of $25,000 with the remainder of the $1.4 million plus accrued interest due "5 years from the date of this note," which would have been September 2011. R&L also signed and received a *Warranty Deed with Vendor's Lien* and *Deed of Trust*. The Lakefront Property thus was conveyed subject to the *Real Estate Lien Note*, and the *Deed of Trust* acknowledged that the finance

terms were part consideration for the sale.  In the event of default, the Hamms had the right to accelerate payment of the $1.4 million and foreclose on the Lakefront Property.

The last contract between the parties was executed on July 20, 2009, following R&L's default on the *Real Estate Lien Note* and the Hamms' institution of foreclosure proceedings.  The *Reinstatement, Modification, and Extension Agreement* (the "*Modification Agreement*") operated to rescind the Hamms' acceleration of the $1.4 million payment, stop the foreclosure proceedings, and extend the repayment term until December 31, 2013.  As part consideration for the modification, R&L expressly acknowledged that:

1. The current principal and interest balance of the Note is $1,179,615.16.
2. The liens and security interests of the Deed of Trust are valid and subsisting liens against the Property and are renewed to secure the payment of the Note and the obligations of the Deed of Trust.
3. There are no claims or offsets against or defenses or counterclaims to the Note and the obligations secured by the Deed of Trust.

Furthermore, the *Modification Agreement* did not "replace [the *Real Estate Lien Note*] or the Deed of Trust.  It only reinstate[d] those documents as written and modifie[d] the [*Real Estate Lien Note*] as set forth in the terms of this Agreement."  R&L expressly "consent[ed] to the reinstatement of the [*Real Estate Lien Note*] under the terms of this Agreement," warranting that the *Real Estate Lien Note* and *Deed of Trust*, "as modified by this Agreement, are valid and enforceable and represent[ed] that they are not subject to rights of offset, rescission, or other claims."

B. *Uncontroverted Facts Applicable to this Appeal*

The following are uncontroverted facts, on the basis of which the district court granted summary judgment in favor of the Hamms and Upchurch:

No. 12-10299

On March 8, 2007, R&L had actual knowledge that the waste-water permit had expired on March 1, 2006.

On July 20, 2009, R&L signed the *Modification Agreement*, expressly modifying and reaffirming the *Real Estate Lien Note* and *Deed of Trust*, and extending the repayment period until December 31, 2013.

The *Modification Agreement* altered the repayment schedule that had originally been established in the *Addendum* to the *Land Sales Contract*.

The effect of the *Modification Agreement* was that R&L "renew[ed] the [*Real Estate Lien Note*] and promises to pay . . . according to the Modified Terms."

R&L expressly acknowledged in the *Modification Agreement* that, "There are no claims or offsets against or defenses or counterclaims to the [*Real Estate Lien Note*] and the obligations secured by the Deed of Trust."

II.

All parties agree that Texas law governs this dispute, and because federal jurisdiction is based on diversity, we apply Texas's substantive law. *Downhole Navigator, L.L.C. v. Nautilus Ins. Co.*, 686 F.3d 325, 328 (5th Cir. 2012). We review a grant of summary judgment *de novo*, applying the same standards as the trial court. *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221 (5th Cir. 2011). "Summary judgment is proper if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Evidence is construed "in the light most favorable to the non-moving party, and [we] draw[] all reasonable inferences in that party's favor." *Griffin*, 661 F.3d at 221. There is a genuine issue of a material fact "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996) (citation omitted). Nonetheless, "[i]f the record, taken as a whole, could not lead a

No. 12-10299

rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *Downhole Navigator*, 686 F.3d at 328 (citation omitted).

### III.

R&L's principal argument is that, based on the Texas Supreme Court decision in *Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671, 678 (Tex. 2000), the district court erred in finding that R&L ratified the real estate transaction. And, even if R&L did ratify the transaction, the district erred in finding that ratification foreclosed R&L's right to seek damages for the Hamms' alleged fraud.

We agree that *Fortune Production* governs this case, but R&L's interpretation is incorrect. Relying on the uncontroverted facts, the district court properly found that R&L ratified its purchase of the Lakefront Property by signing the *Modification Agreement*. Moreover, R&L received the benefit of its bargain—the right to continue in possession of the property and avoid foreclosure—which now precludes it from seeking rescission or damages based on the Hamms' alleged fraud.

"Ratification is the adoption or confirmation by a person with knowledge of all material facts of a prior act which did not then legally bind him and which he had the right to repudiate." *Fortune Production*, 52 S.W.3d at 678 (quoting *Wise v. Pena*, 552 S.W.2d 196, 199-200 (Tex. Civ. App. 1977)) (internal quotation marks omitted). "Ratification can also occur where the defrauded party, after he becomes aware of the fraud, enters into a new agreement by which the rights of the parties are adjusted." *Wise*, 552 S.W.2d at 199.

R&L contends that it did not ratify the *Land Sales Contract*, which R&L alleges it was fraudulently induced into signing, because the *Modification Agreement* only applies to the *Real Estate Lien Note* and *Deed of Trust*.[2] To

---

[2] R&L does not dispute that it knew about the Hamms' misrepresentation before signing the *Modification Agreement*. But, relying on *Household Credit Services, Inc. v. Driscol*,

No. 12-10299

accept R&L's position, we would thus have to view this not as one real estate transaction, but as six separate and independent contracts between the parties. We decline, however, to depart from the "well-established" rule in Texas "that instruments pertaining to the same transaction may be read together to ascertain the parties' intent, even if the parties executed the instruments at different times and the instruments do not expressly refer to each other, and that a court may determine, as a matter of law, that multiple documents comprise a written contract. In appropriate instances, *courts may construe all the documents as if they were part of a single, unified instrument*." *Fort Worth Ind. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000) (emphasis added) (footnotes omitted). The *Modification Agreement* unambiguously renewed R&L's financial obligations to the Hamms; obligations that only existed due to the purchase and sale of the Lakeshore Property. In the light of the transaction as a whole, R&L clearly intended to be bound to the real estate sale, notwithstanding the alleged fraud. We thus hold that R&L ratified the Lakefront Property sale. The only question remaining is whether R&L's ratification foreclosed its right to seek damages.

*Fortune Production* again provides the legal framework for determining when ratification operates to foreclose both the right to rescission and damages. R&L argues that *Fortune Production* overruled prior Texas Court of Appeals's

---

989 S.W.2d 72 (Tex. App. 1998), R&L argues that courts must determine the defrauded party's subjective intent in ratifying a contract. *See id.* at 87. R&L's argument is not supported under Texas law, which requires unambiguous contracts to "be enforced as written, looking at the objective intent as manifested by the language used, rather than interpreting it by attempting to divine the subjective intent of the parties." *Sulzer Carbomedics v. Or. Cardio-Devices, Inc.*, 257 F.3d 449, 457 (5th Cir. 2001) (citing *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981)). A party's independent interpretation of a contract is irrelevant unless the contract is first found to be ambiguous. *See Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445, 449-50 (Tex. 2011). The *Modification Agreement*'s express terms clearly demonstrate R&L's intent to ratify the Lakefront Property sale in order to maintain possession of the property, despite R&L's default on its financing obligations. Because the *Modification Agreement* is not ambiguous, we do not look to R&L's subjective intent.

cases holding that ratification forecloses the right to seek damages. This argument, however, overstates *Fortune Production*'s holding. In *Fortune Production*, the Texas Supreme Court clarified that ratification will not *always* preclude future claims for damages, but stated, "We agree with the courts below that there may be circumstances under which a party who was induced to enter a contract by fraud *may ratify that contract in such a manner that a claim for damages is foreclosed.*" 52 S.W.3d at 676 (emphasis added). Then, in determining whether ratification bars a damages claim, *Fortune Production* focused its analysis on whether the various parties had received the benefit of their bargain. *See id.* at 679-80. Where a party received the benefit of its bargain, the court concluded that rescission and damages were both foreclosed. *See id.*

R&L asserts that it did not receive the benefit of its bargain, "a development-ready tract of land with all applicable permits in place." Although R&L's statement of the bargain may have been accurate at the time of the original real estate transaction, the *Modification Agreement* altered the terms between the parties for the sale of the Lakefront Property. Under the *Modification Agreement*, R&L received all of the benefits it bargained for—it maintained possession of the Lakeshore Property by inducing the Hamms to stop foreclosure proceedings and agree to extend R&L's repayment schedule through December 2013, despite R&L's earlier default on the *Real Estate Lien Note*.

The instant case factually is similar to *B & R Development, Inc. v. Rogers*, 561 S.W.2d 639 (Tex. Civ. App. 1978), in which the Texas Court of Appeals found that ratification foreclosed the plaintiff's right to seek damages for fraud. In *Rogers*, the plaintiff alleged that the defendant misrepresented the number of acres involved in a real estate sale. *Id.* at 640-41. Although the acreage likely was misrepresented, the court found "B & R's cause of action was barred or waived as a matter of law because after B & R discovered the acreage deficiency

No. 12-10299

and had full knowledge thereof, it renegotiated the transaction and executed renewal notes for the balance of the full amount of the purchase price." *Id.* at 641; *see also id.* at 642-43 ("B & R paid an additional $30,000.00 of the original purchase price and executed renewals and extensions of the notes for the remaining balance thereof, in effect again agreeing to pay $270,000.00 for the tract, though it contained less than the 90 acres represented."). With reference to the seminal Texas Supreme Court case of *Hunter v. Lanius*, 18 S.W. 201 (Tex. 1892), *Rogers* noted that, "Where one with knowledge of a fraud perpetrated on him in a prior transaction executes a renewal of his obligation, he thereby ratifies the original transaction and will not be permitted to plead the fraud." *Rogers*, 561 S.W.2d at 642. The *Modification Agreement* renewed R&L's obligations with respect to the purchase of the Lakefront Property. And, like the plaintiff in *Rogers*, R&L's ratification foreclosed its right to seek damages.[3]

## IV.

In June 2009, with full knowledge of the Hamms' alleged fraud, R&L executed the *Modification Agreement*, allowing it to stave off foreclosure and maintain possession of the Lakefront Property. Through the *Modification Agreement*, R&L ratified the Lakefront Property purchase and received the benefit of its bargain. In accordance with *Fortune Production*, R&L's actions foreclosed its right to seek damages for the alleged fraud. The district court's judgment therefore is

AFFIRMED.

---

[3] We also hold that ratification bars R&L's claims against Upchurch, even though Upchurch was not a signatory or third-party beneficiary to the *Modification Agreement*. The district court properly relied on *Franke v. Jones*, 170 S.W.2d 795 (Tex. Civ. App. 1943), in finding that R&L's ratification relates back to the beginning of the transaction in June 2006. R&L's claims against Upchurch thus are foreclosed for the same reasons as R&L's claims against the Hamms.