PHŒNIX REFINING CO., Inc., v. WALKER.

SAME v. STUTTS.

SAME v. WILSON.

Nos. 3205–3207.

Court of Civil Appeals of Texas. Beaumont.
July 28, 1937.

Rehearing Denied Aug. 4, 1937.

struck head-on by a truck belonging to appellant, Phœnix Refining Company, Inc., driven by R. L. Wood; the collision occurred on the old Livingston-Liberty road, on a sand hill. Appellees had their car under control, saw the approaching truck, and stopped their car before the collision—they were about fifteen or twenty yards from the truck when they stopped their car. These three suits were brought by appellees against appellant and Wood, the driver, for the damages suffered by them in the collision, alleging negligence against appellant, proximately causing the collision, in operating the truck at the time of the collision at a dangerous and reckless rate of speed, in operating it with defective brakes, and in operating it with the windshield "in such a dirty, filthy and greasy condition that the view of the driver in front of him was practically destroyed." Appellant answered by general and special demurrers, general denial, pleas of contributory negligence, etc. On trial to the court without a jury judgment was entered against both the defendants in favor of appellee J. B. Walker for $1,275; for appellee A. W. Stutts, $600; and for appellee J. B. Wilson, $2,500; only Phœnix Refining Company, Inc., has perfected its appeal against the judgment of the lower court.

Appellees insist that the road traveled by the parties at the time of the collision was a public road; appellant insists that it was nothing more than a community road. It was one of the oldest roads in Polk county, used generally by the public without restraint or limitation upon its use. It was maintained by the public; the public built its bridges, etc. These facts, under the rule recognized by this court in Hoffman v. Bynum, 101 S.W.(2d) 600, and the authorities therein cited, make the road a public road.

Appellees alleged that the road was a public road; that, at the place of collision, it was narrow; that it was so narrow that two cars could not pass each other; that the collision occurred on a curve; and other facts and circumstances making the road extra hazardous at that point; in connection with these allegations they alleged that the driver of the truck "was familiar with said road." On the ground that its negligence was not "increased" or "accentuated" by the knowledge of its driver of the conditions of the road, appellant excepted to the allegation that "he

V. A. Collins, of Livingston, and Tilley & Tocker, of Fort Worth, for appellant.

Campbell, Murphy & Cochran and Z. L. Foreman, all of Livingston, for appellees.

WALKER, Chief Justice.

These three cases grew out of the same collision and will be considered together.

About 3:30 p. m. on the 4th day of August, 1934, appellees J. B. Walker, A. W. Stutts, H. B. Wilson, and a Mr. Kelly, riding together in a Ford coupe, were

was familiar with the road." This exception was without merit for two reasons: First, appellant suffered no injury thereby, and, second, the allegation was a proper predicate for the three elements of negligence alleged.

By propositions 2 to 8, inclusive, appellant assigns error in overruling its exceptions to the allegations that the excessive rate of speed and the condition of the brakes on the truck, at the time of the collision, constituted negligence; these allegations were that the speed "was high, dangerous and reckless," with no allegation as to the specific rate of speed, and that the brakes were "inadequate," with no allegation as to the specific defects. The point made is that these allegations were mere conclusions of the pleader. These exceptions are overruled because appellant suffered no injury, and could have suffered no injury, by reason of the matters complained of. It was not hindered in the production of its evidence and there was no showing of surprise in the introduction by appellees of their evidence. Under the following authorities, the allegations of the petition stated a cause of action and were not subject to appellant's exceptions. Morrison v. Antwine (Tex.Civ.App.) 51 S.W.(2d) 820; Stamper et ux. v. Scholtz et al. (Tex.Civ.App.) 29 S.W.(2d) 883; Olivas et ux. v. El Paso Electric Co. (Tex. Civ.App.) 54 S.W.(2d) 154; Woodson Mill & Elevator Co. et al. v. Graham Mill & Elevator Co. (Tex.Civ.App.) 57 S.W.(2d) 943.

As to the brakes, the allegations of the petition met the full requirements of article 799, Penal Code, which condemns as an offense the operation upon a public highway of a motor vehicle "not provided with adequate brakes kept in good working order." For construction of that article supporting the court's ruling on the exceptions, see Houston & T. C. Ry. Co. v. Stevenson (Tex.Com.App.) 29 S.W.(2d) 995.

We do not review the evidence, though we think it was sufficient to support the judgments, on the issues of negligence predicated on the speed of the truck and the condition of its brakes. The judgments appealed from have abundant support in the allegations of negligence predicated on the condition of the windshield and the proof in support of these allegations. Appellees alleged: "(g) That the truck so operated by defendant, R. L. Wood, immediately before and at the time of the collision, was being operated by the said R. L. Wood with the windshield in such dirty, filthy and greasy condition that his view in front of him was practically destroyed, making it impossible for him to see any distance in front of him, and that by reason of the operation of said truck by defendant, R. L. Wood, with the windshield in such dirty, filthy and greasy condition, he was unable to see the car in which plaintiff was riding approaching from the opposite direction; and that such negligence in so operating said truck by the said R. L. Wood, with the windshield in such condition, was a proximate cause of the collision of said vehicles, and the resultant injuries to plaintiff, as hereinafter alleged."

We overrule appellant's exceptions that the alleged condition of the windshield— that the driver of the truck could not see any distance in front of him—was "a mere conclusion of the pleader." Appellees plead the condition of the windshield and the facts that caused its defective condition. The evidence fully supported these allegations of negligence, and that they proximately caused the damages sued for. The testimony of the witnesses, on this issue, questions and answers reduced to narrative, was as follows: Appellee A. W. Stutts testified that on the 4th day of August, 1934, in company with the other appellees and Mr. Kelly, he left Goodrich about 3:30 p. m. in Mr. Walker's car, and further:

"After I left Goodrich and started over the road to Highway 146 something out of the ordinary happened to me; I had a collision with someone. I do not know how far it was that this collision took place from the old Camp Providence, or the Livingston-Liberty road, but in my judgment it looked to be about a mile and a quarter, or a half. The place where that collision took place was on a curve. The way I was traveling, going toward Camp Providence, the curve was to the right. I was in collision with an oil truck. I saw this oil truck coming before the accident occurred about twenty-five or thirty yards away. Boyce stopped the car; he put on the brakes and stopped. I would not say he was going over twenty miles—fifteen or twenty miles an hour, something like that just before he applied the brakes. * * * "I believe the truck was going thirty or thirty-five miles per hour. Our car was standing still at the time they collided.

326

The oil truck was about fifteen or twenty yards from our car, the one we were riding in, when we stopped. I was watching that oil truck coming all of the time. After I saw it I continued to watch it all of the time. I couldn't tell that it ever slowed up until it struck us. * * *

"As to what took place between you, or in my presence and Wood's presence, with reference to any conversation, I asked him why he didn't stop, and he said he didn't see us because his windshield was so dirty he could not see through it. He said his brakes would not hold. He said he did not see us 'and my brakes were old and my windshield was so dirty I could not see through it'. When he told me that I looked at his windshield; it was dirty. It was greasy; I judged it to be grease; it had oil and dust on it, and you could not see through it. * * *

"That is just a little incline down hill. A man traveling along there in a vehicle would not notice the incline to amount to anything."

Appellee Wilson testified:

"When I first spied this truck I could say we were traveling not over twenty miles an hour. We were going down just a slight incline. We were traveling around a curve to the right. The vehicle in which I was riding, being driven by Walker, stopped; we came to a complete stop. I would say the oil truck was something like across this room back to that wall from us when our car came to a complete stop. I could see the truck coming on meeting us. Until just a second before it struck us it had never slowed up that I could tell. After the collision I don't know what took place out there. * * *

"I testified that the truck came at the same rate of speed until just before it struck us. I have driven motor vehicles. I belive I am in a position to tell the court and jury approximately the speed that truck was making at the time it came right upon us. I believe it was making between thirty and forty miles an hour. At this particular place where the vehicles collided the road was not wide enough to pass, staying in the road there."

Ernest Laroe testified:

"The vehicles were still there on the ground when I got there. They had not been moved. I didn't observe anything on the ground with reference to stopping the vehicles except I noticed where the Ford had slid its wheels; possibly ten or twelve feet. Right where the wreck actually happened the soil or surface seemed like the ground was rather smooth. * * *

"In looking over the ground I noticed the truck had not slid its wheels. I noticed the Ford car had slid its wheels. Behind the car at the point of the collision the condition of the ground as to sand was about the same. The condition back of the truck and behind the car was practically the same soil; there was no mud on one side and sand on the other."

The driver of the truck gave the following testimony:

"Q. * * * Now, then, when you got out, I will ask you if you did not say to these boys about the first thing, 'Boys, this is my fault. My brakes were not working on my truck, and my windshield was so dirty, filthy and greasy that I didn't see you until I almost struck you? A. I don't remember saying that.

"Q. Will you say you didn't say it? A. I do not recollect what was said at that time. * * *

"Q. You testified your windshield was dirty, and you could not see clearly through it? A. I think it was a settlement of dust on the windshield, if there was anything.

"Q. And oily, too, wasn't it? A. It would have to be something like that.

"Q. And that would have to be oil, too, wouldn't it? A. I imagine it is."

There is no merit in the contention that appellees convicted themselves of contributory negligence by the allegations of their petition. They plead the condition of the road, as stated above; facts showing that they were using due care in the operation of their automobile just before and at the time of the collision; and facts sufficient to convict appellant of negligence in the operation of the truck. Appellees, as did appellant, had the right to travel the road, regardless of its condition. The negligence charged against appellant was not in operating its truck on the road, but the manner of its operation. This was a public road; certainly neither appellees nor appellant could be convicted of negligence as a matter of law on the mere fact that they were using the road for the purposes of its dedication. Appellees had the legal right to ride four in the car, and there is nothing in the record to compel the conclusion that, under the evidence in this case, this fact constituted negligence as a matter of law.

■ The court did not err in excluding the following statement made by Dr. Bergman, offered and received as evidence in appellee Wilson's case; Dr. Bergman died before these cases were tried:

"Nov. 8, 1934

"Polk County, Livingston, Texas.

"My name is Dr. H. Bergman. I operate the Bergman Hospital at Livingston, Texas.

"On Aug. 4, 1934 a Mr. H. B. Wilson was brought to my hospital and appearing with him were J. B. Walker and A. W. Stutt. Mr. H. B. Wilson asked for and needed medical aid. Messrs. J. B. Walker and A. W. Stutt did not ask for medical attention nor did they appear to need any medical or surgical aid.

"Mr. H. B. Wilson was treated for a cut about 2 inches long on his forehead near the hairline. Mr. Wilson stayed at my hospital that night and was discharged the following day.

"An X-ray picture was made of Mr. H. B. Wilson's head and the skull bones were found in order, no fracture appearing. The picture can be seen at my office now.

"I have not had occasion to treat Mr. H. B. Wilson since he left my hospital, nor have I seen or heard of him since.

"On or about Aug. 6, 1934, I was called to the home of A. W. (Alex) Stutts about nine miles east of Livingston. Upon arrival I was told that Mr. Stutts had had a convulsion but had apparently recovered, altho he had a little fever when I arrived and was complaining of pains. I have not since been called to treat him nor has he come to me for any attention.

"I have no record of treating Mr. J. B. Walker since the accident of Aug. 4, 1934.

"H. Bergman, M.D."

This statement by Dr. Bergman was ex parte and made in the absence of appellee Wilson; the following authorities support the conclusion that it was hearsay and inadmissible: Duree v. Aetna Ins. Co. et al. (Tex.Civ.App.) 66 S.W.(2d) 764; 17 Tex.Jur. p. 520, § 211; 17 Tex.Jur. p. 526, § 213; Hobart Mfg. Co. v. Joyce (Tex. Civ.App.) 22 S.W.(2d) 955; Fletcher v. First Nat. Bank (Tex.Civ.App.) 126 S.W. 936; Owens v. Jackson (Tex.Civ.App.) 35 S.W.(2d) 186; Hargis v. Moxon (Tex. Civ.App.) 34 S.W.(2d) 353; North American Accident Ins. Co. v. Miller (Tex.Civ. App.) 193 S.W. 750. For the same reasons, the court properly excluded the Bergman statement offered in the trial of the Stutts case.

■ Appellee Stutts returned to his home immediately after the accident and Dr. Bergman was sent for to treat him. Dr. Bergman answered the call and gave him a prescription for his condition. The prescription was filled. As stated above, Dr. Bergman died before these cases were tried. On the trial of the Stutts case, Dr. Murphy was called as a witness and gave the following testimony:

"Q. Now, Dr. Murphy, I will ask you if a person was in an automobile accident on the 4th day of August, 1934, and received a bruise or a contusion here across his forehead and suffered from headaches on that day and on the following day, he just fell out and was unconscious and was carried in the house and a doctor was called and examined him and gave him that prescription. What in your opinion was that intended for? A. That prescription is a nerve sedative or is supposed to quiet the nervous system.

"Q. I will ask you, doctor, if a person was absolutely normal prior to the 4th day of August, 1934, and received a lick on the forepart of his head as described, on the 4th day of August, 1934, and on the 5th day of August, 1934, fell out unconscious and had to be carried in the house, what in your opinion was the cause of that condition? A. Well it might be several things. It might be a concussion of the brain. It might be a hemorrhage or a pressure.

"Q. I will ask you if following that for a period of about eighteen months he suffered with headaches and extreme nervousness, then what in your opinion was the cause of that? A. Well that might be an injury to his brain that caused these headaches from a lick.

"Q. I will ask you if the medicine indicated on that prescription there, would be a proper treatment for a case of that kind? A. To allay nervousness, yes, sir. Let's see. The medicine indicated on this prescription would be a nerve sedative, and that would be a proper treatment for that indication".

Appellant objected to this testimony, quoting from his proposition: "It was error to admit such prescription in evidence over defendant's objection, and to have other doctors testify as to what ail-

ments such medicine was given for." These exceptions are without merit. The prescription was identified. That Dr. Bergman wrote the prescription was unquestioned. It was permissible for an expert, such as Dr. Murphy, to testify as to the nature of the medicine called for by the prescription and its use.

The court did not err in permitting Webb Walker to testify that he saw appellee Stutts on the 5th of August; that he could not talk; that he was unconscious; that he was not rational; that he was "laying there groaning; that he seemed to be asleep, that he was kind of slobbering at the mouth and froth came from his mouth." This testimony was not expert in its nature, but a mere statement of the facts observed by the witness.

The evidence reasonably supports the amount of damages found by the lower court in favor of each of the appellees. As a result of the collision, appellee Wilson received injuries on his head now shown by two scars; he suffered a brain concussion which gave him "awful" headaches and that condition continued to the date of the trial; before the collision he did not have these headaches; he was confined to his room about fifteen days; he was twenty-eight years old when he was injured, in good health, strong and hearty, able to do hard manual labor—since his injuries he suffers with dizziness, loss of memory, nervousness, does not rest well at night. Was able to read a little before he was injured—since his injury is not able to read; his eyes hurt when he tries to read. Before his injury he made his living by manual labor; he was qualified to do only manual labor. Before his injury he would work on oil rigs; since his injury he is not able to do that class of work. In our judgment this summary of the testimony offered by appellee Wilson supports the judgment in his favor for $2,500.

At the time of the trial appellee Walker was twenty-nine years of age. Before the collision his health was good and his physical condition was good, except he had a broken finger at the time of the collision. As a result of his injuries the finger was rebroken; Dr. Bergman "fixed it up with plaster." In the collision all the spokes of the steering wheel but one were broken; appellee's head and hand hit the wheel and injured his arm from the elbow to the shoulder, impairing the use of the arm for about a month. He received a gash in the center of his forehead which left a scar. He testified that the collision "knocked all these lower teeth loose, and broke two upper teeth, * * * and broke the enamel off the upper teeth." The condition of his teeth caused him pain; when he drinks "cold water or anything like that, it hurts pretty bad, but so far as eating is concerned, they do not bother me, but if I take a drink of cold water or something like that they do hurt." He also suffered a back injury. At the time of the trial he suffered pain in his back; "if I stoop over to pick up something, the hurting hurts me in the back and I cannot come up with it"; when he made a quick turn his back "bothered" him. Before his injury he received $5.40 a day, seven days per week "roughnecking" for the Humphrey Company; after the collision he was not able to do that class of work. He is qualified only to work "as a common laborer" for support. Because of his injuries he worries and suffers mental anguish. The weight of this testimony was for the court. We think it was sufficient to support the judgment in Mr. Walker's favor for $1,275.

Appellee Stutts testified that he was injured in the collision; that his head was injured, "up there in my forehead." He testified that, after he got home from the collision, "I fell out in the yard and did not know anything for two or three days." He suffered headaches for about eighteen months. He farmed part of the time after the injury but did not work regularly—"I was not able to." Before the injury his physical condition was good. After his injury he was nervous; had headaches, "would have to sit down and rest and get cool"; he suffered quite a bit of pain from the injuries received in the collision, which alarmed and worried him. It is believed, and the court was the judge of his credibility, the testimony of appellee was sufficient to support the judgment in his favor for $600.

From what we have said it follows that the judgments in all three cases should be affirmed, and it is accordingly so ordered.

Affirmed.