**DENNIS v. GALBRETH.**

No. 15124.

Court of Civil Appeals of Texas.
Fort Worth.

March 17, 1950.

Rehearing Denied April 4, 1950.

Thomas L. Lowry and Ben Goodwin, both of Tyler, for appellant.

Gullett & Gullett and Alexander Gullett, all of Denison, for appellee.

SPEER, Justice.

Appellee Reid Galbreth sued appellant L. W. Dennis in a district court of Grayson County on a note for the principal sum of $812 with accrued interest and attorney's fees, and for a foreclosure of a chattel mortgage lien on a used Nash automobile. There are no innocent purchasers involved and the mortgage lien, as between the parties, is not questioned on any theory involved in the Certificate of Title Act. Vernon's Ann.P.C. art. 1436—1.

The appellant answered generally and by cross action, seeking to recover $2,000 actual and $5,000 exemplary damages. His plea for actual damages was predicated upon the loss of the use of the car after it was taken from his possession by the receiver appointed by the court. He claimed exemplary damages under appropriate pleadings.

In his cross action appellant alleged substantially that he relied upon the representations made by appellee as to the condition of the Nash car. That he purchased it on March 1, 1948 and gave his note for $812 for the deferred payment of the balance of the consideration. However, his testimony did not support these allegations; we shall notice this later.

A jury was selected and at the close of all testimony, on motion of appellee, the court instructed a verdict for appellee as plaintiff and as cross-defendant. Hence this appeal to the Dallas Court of Civil Appeals and upon an equalization order was transferred to this Court.

Appellant relies upon five points of error. Each complains of the instructed verdict for appellee and assigns separate reasons for his contentions. We shall not discuss them separately but will notice the argument and authorities relied upon throughout his brief.

We think it proper to note that appellant did not plead failure of consideration of the note sued on in any form or degree, nor did he seek cancellation, reformation or rescission, but clearly elected, as he had a right to do, to leave the transaction stand and to rely upon damages for the alleged fraud and misrepresentations of appellee.

Appellant's allegations of injuries sustained and damages resulting therefrom were contained in the fourth paragraph of his cross petition. These allegations in effect charged that notwithstanding appellee's fraudulent representations about the condition of the car, the appellee caused a receiver to be appointed who in turn dispossessed appellant of the Nash car, whereby he lost the use of the car for a given period, to his damages of $2,000. During the trial while appellant was a witness and after being asked many searching questions on cross examination, the jury was withdrawn and in its absence appellant, through his counsel, withdrew paragraph four of his cross action. Unquestionably when this was done appellant had no allegations left asserting injuries and damages. However, his prayer remained, which asked for $2,000 actual and $5,000 exemplary damages and for general relief. After withdrawal, as pointed out, any testimony theretofore offered on that part withdrawn became immaterial and incompetent and had no probative value for lack of pleading.

Appellant's own testimony concerning the transaction was in substance that he

made the deal with appellee on February 26, 1948, delivered his Chevrolet sedan, gave a draft on a Tyler bank for the $800 difference between the Chevrolet and Nash cars, and drove the Nash car to Tyler; he had motor trouble on the way and found when he got to Tyler that it was "worn out." That he stopped payment of the draft he had given and so notified appellee by telephone. He drove the car back to Sherman to appellee's place of business and after some controversy with appellee about the deal, signed and delivered the note and mortgage sued on by appellee. The note and mortgage were dated March 1, 1948, five days after the original deal, at which time the $800 draft was made and payment stopped by appellant because, as he put it, "we detected the automobile (Nash) was worn out, and we refused payment of it."

Appellant relies upon such authorities as 20 Tex.Jur., pp. 15 and 16, wherein the well settled rule is announced that fraud is a defense which is cognizable, both in law and in equity, and annuls all contracts infected with it, and when found to exist, relates back to the inception of the contracts to which it pertains. The same authority points out that the fraud within itself does not render the contract void but voidable, and refers to 10 Tex. Jur. 63, sec. 35, where similar language is again used and explains that fraud may be either waived or the contract rescinded on that account. Appellant testified to a state of facts which clearly disclosed that he knew all the representations theretofore made by appellee as to the condition of the Nash car were false and untrue when he executed and delivered the note and mortgage which appellee sued on.

We note that appellant testified that he made the deal with appellee on the same day of the date of another instrument shown in the record, which appears to be February 26, 1948, at which time he says appellee made the false and fraudulent representations about the condition of the Nash car; that he drove it to Tyler, had motor trouble on the way, had it inspected and repaired at Tyler and at that time learned the car was worn out. Yet, with this knowledge, he executed the note and mortgage sued on five days later on March 1, 1948. Notwithstanding the general rule that fraud vitiates a contract as previously pointed out by us, it is equally well settled that the rule has no application when a complaining party is fully aware of the alleged fraud and thereafter promises in writing, as did appellant, to pay the consideration promised by him. Vick v. Downing, Tex.Civ.App., 120 S.W.2d 279 (281); Hufstutler v. Grayburg Oil Co., Tex.Com. App., 48 S.W.2d 591; Judge v. Shaboub, Tex.Civ.App., 57 S.W.2d 613.

Aside from what we have already said, appellant had the option to pursue either of two remedies: (1) To stand on the transaction as made and sue for damages for the alleged fraud; or (2) to rescind the contract, return what he received and receive back what he paid. Russell v. Industrial Transportation Co., 113 Tex. 441, 258 S.W. 462. In this case appellant elected to pursue the former course. He did not seek to rescind the contract or to cancel his promise in writing to pay, nor did he plead or otherwise claim a failure of consideration.

Again, when false and fraudulent representations are relied upon to defeat a written obligation, as was done in this case, the alleged defrauded party must show the falsity of the representations, his dependence thereon, that he was induced thereby to sign the obligation and that he has been damaged by the fraud. Cain v. Fry, Tex.Civ.App., 86 S.W.2d 270. In the instant case, appellant knew before he executed the note sued on that appellee's representations about the condition of the Nash car were false. When he withdrew the fourth paragraph of his cross petition he had no allegation left of damages, hence, there was nothing in this respect for the jury to determine. In short, there was no pleading of damages resulting from the alleged fraudulent representations by appellee. Hopkins v. Woldert Grocery Co., Tex.Civ.App., 66 S.W. 63, cited with approval in Russell v. Industrial Transportation Co., 113 Tex. 441, 258 S.W. 462. It cannot be successfully contended that in the absence of a request therefor nominal

582

damages necessarily follow the breach of a contract. Allbritton v. Mading's Drug Stores, Inc., Tex.Civ.App., 138 S.W.2d 901. It is elemental that no exemplary damages could have been awarded in this case when, under the circumstances before the trial court, no actual damages could be recovered. Hughes v. Belman, Tex.Civ.App., 200 S.W.2d 431, writ refused, n. r. e.; Stanley v. Martin Wagon Co., Tex.Civ. App., 39 S.W.2d 127, writ refused.

 When all is summed up, this record indisputably reveals that appellant had full knowledge of the "worn out" condition of the car he acquired when he executed the note and mortgage sued on, that he could not have at that time been deceived by anything to the contrary that appellee may have told him five days earlier; that he did not sue in the cross action to rescind the sale, cancel the contract, or plead failure of consideration in whole or in part; but elected to retain the car over a year and drive it 30,000 miles and when sued on his note rely in his cross action on damages, and to make it worse for appellant he withdrew his only plea in which he claimed resulting actual damages. These matters are made conclusive against appellant by his own testimony and act of withdrawal of that part of his pleadings. It is needless to say that reasonable minds could not differ as to any conclusions that could be reached in regard to appellee's right to recover as plaintiff and as cross defendant, as instructed by the trial court. There was no controverted fact issue for submission to the jury and the instructed verdict was proper.

All points of error are overruled and the judgment is affirmed.

### On Motion for Rehearing

Our opinion and judgment of affirmance in this case were dated March 17, 1950. Rule 458, Texas Rules of Civil Procedure, allows fifteen days in which a motion for rehearing may be filed. A computation of that time under Rule 4, Texas Rules Civil Procedure, discloses that the fifteen day period expired on April 1, 1950. Appellant has sent to the clerk of this court, through the United States mail and requested its filing, a motion for rehearing. The envelope in which the enclosure was received shows a postmark of "Tyler, Texas, April 2, 6:30 P.M., 1950." The motion was received by the clerk of this court on April 3, 1950. The request for filing is obviously too late.

Under Rule 5, T.R.C.P., we cannot enlarge the time for such filing, "except as stated in the rules relating thereto," none of which are applicable in this case.

While the instant motion is not affected by the amended Rule 5, supra, effective March 1, 1950, attention is called to that provision in the amended rule, in regard to the postmark on the envelope, noting that if such motions are sent by United States mail they must bear a postmark of at least one day before the expiration of the fifteen day period.

We have no option in this case but to deny the filing of appellant's motion for rehearing. It is so ordered.