**Robert Lee WILKINSON, Appellant,**

v.

**Maxine LINDSEY, a Minor, et al., Appellees.**

**No. 6840.**

Court of Civil Appeals of Texas. Amarillo.

Feb. 16, 1959.

Rehearing Denied March 4, 1959.

Request to Reconsider Denied March 6, 1959.

Vickers & Vickers, Lubbock, for appellant.

Wagonseller & Cobb, Lubbock, for appellees.

PITTS, Chief Justice.

This appeal is from a judgment for personal damages in the total sum of $5,517.50 for injuries received by a minor child late in the afternoon on December 16, 1956, as a result of an intersection collision between two automobiles occurring at a point where Quirt Avenue intersects McKenzie Freeway within the city limits of Lubbock, Texas. Appellee, Irene Lindsey, as the mother and next friend of Maxine Lindsey, a minor 16 years of age, filed suit against appellant, Robert Lee Wilkinson, for damages alleging that her daughter, while riding as a passenger in a Ford automobile being operated east on the McKenzie Freeway by James Carl Ethridge, was injured when the Ford car collided with a Chevrolet automobile being operated north on Quirt Avenue by appellant, Robert Lee Wilkinson, at the intersection thereof and injured her said daughter by reason of the negligence of appellant at the time and place in question as a result of his failure to keep a proper lookout, as a result of his failure to stop at a stop sign on his side of the intersection as the law requires and

yield the right-of-way to the Ethridge Ford car traveling on the McKenzie Freeway, as a result of his failure to apply his brakes before driving his car directly into the path of the Ethridge Ford car, in failing to keep his car under proper control and also because he brought his automobile to a stop directly in the path of the Ethridge Ford car in which Maxine Lindsey was a passenger.

Appellant answered by denying generally appellees' allegations and further pleading in effect as special defenses that James Carl Ethridge, the driver of the Ford car, was guilty of negligence by reason of his driving at an excessive rate of speed under the existing circumstances, by reason of his racing with another car on the four-lane public highway in question at the time and place in question, by reason of the failure of Ethridge to keep a proper lookout and by reason of the failure of Ethridge to properly apply his brakes, which brakes were defective, and that all of such alleged acts of negligence were either singly or by combination the sole proximate cause of the collision. Appellant further alleged that he proceeded into the intersection in question following another moving automobile that was immediately in front of him and that he would have safely cleared the intersection except for the previously alleged acts of negligence of the driver of the Ford car and the further negligence of the driver of the Ford car in question and the driver of another car as they were racing their said automobiles on the McKenzie Freeway at the time and that Maxine Lindsey was negligent in riding with such a reckless driver as Ethridge, the driver of the Ford car, and in failing to warn him of the dangers ahead of them, and in riding in a crowded car with five other people.

Based upon such pleadings, the case went to trial before a jury which found in effect that on the occasion in question appellant was guilty of negligence which proximately caused the collision in question by reason of his failure to keep a proper lookout, by reason of his failure to apply the brakes of his

car so as to avoid the collision and by reason of his failure to yield the right-of-way to the Ethridge Ford car in which Maxine Lindsey was a passenger. The jury further found that on the occasion in question the Ford car being driven by Ethridge was not racing with another automobile and made further findings which exonerated James Carl Ethridge and Maxine Lindsey of any negligence which proximately caused the collision and further found that appellees, Irene Lindsey and Maxine Lindsey, suffered damages in the total sum of $5,517.50. Based upon such findings the trial court rendered judgment accordingly from which judgment appellant perfected his appeal.

In his points of error presented, appellant complains only about certain sets of special issues concerning negligence having been submitted to the jury or about the refusal of the trial court to submit to the jury his certain requested sets of special issues and finally about the failure of the trial court to instruct the jury concerning the law of the road governing traffic at an intersection not controlled by a stop sign or any other devices used to control traffic. In our opinion the controlling question to be here determined is whether or not under the record of the case the trial court properly submitted the case to the jury in the light of the provisions of Section 73(b) of Article 6701d, Vernon's Ann.Civ.St., which section reads as follows:

> "The driver of a vehicle shall likewise stop in obedience to a stop sign as required herein at an intersection where a stop sign is erected at one or more entrances thereto although not a part of a through highway and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to the constitute an immediate hazard, but may then proceed."

Appellant first complains because the trial court refused to submit his requested Special Issues Nos. 5, 5A and 5B inquiring

if Ethridge failed to yield the right-of-way to appellant and if he did so fail was such failure negligence and the sole proximate cause of the collision. In connection with the same complaint and briefed together, appellant further complains because the trial court inquired in Special Issues Nos. 13, 14 and 15 submitted to the jury whether or not appellant failed to yield the right-of-way to Ethridge, the driver of the Ford car, and if he did so fail was such failure negligence which proximately caused the collision in question.

■ It is an elementary rule of law that in a jury case such as this the trial court must be governed by the pleadings and the evidence in submitting the issues to the jury. In the case at bar, appellees pleaded that appellant negligently failed to stop at the stop sign on Quirt Avenue before entering the intersection in question and yield the right-of-way to the Ethridge car, which in our opinion is a sufficient pleading to support the submission of Special Issues Nos. 13, 14 and 15 inquiring if appellant failed to yield the right-of-way to the Ethridge car and if such failure, if any, was negligence which proximately caused the collision. Concerning the question of whether or not there was sufficient evidence to support the submission of such issues, we shall now examine the testimony given by appellant himself.

■■ Appellant testified in effect that at the time of the said collision he was 73 years of age; that on the occasion in question he, while driving north on Quirt Avenue, came to the stop sign on Quirt Avenue at the point of the intersection in question, with which point of intersection he was well acquainted, where he found another car ahead of him stopped for the stop sign waiting for the traffic on the Freeway to clear and he (appellant) also stopped behind the other car; that the said Freeway is a divided highway with two lanes leading east to accommodate the east bound traffic and two lanes leading west to accommodate the west bound traffic and the

stop sign on Quirt Avenue is approximately 70 or 80 feet from the south edge of the pavement on the Freeway; that both his car and the other car waited at the stop sign for a "minute or two for the traffic to get by"; that after it appeared that the traffic going east had cleared on the Freeway the other car started across the intersection and he followed the other car some two to six feet behind it with both cars proceeding onto the Freeway at a speed rate of approximately 15 or 20 miles per hour; that before he left the stop sign he looked west and saw two moving cars coming down the slope east toward the intersection, running one in each lane of that part of the Freeway carrying traffic east and they appeared to be running about even with each other and he guessed they were about a quarter of a mile away; that probably the car in the south lane of the traffic was a little behind the one in the north lane which he learned later was the Ethridge Ford car with which he collided; that when he first saw the said two moving cars coming east down the slope west of him on the Freeway, he thought both he and the car immediately in front of him had plenty of time to safely cross the Freeway and such was the reason he pulled into the intersection; that it was not unusual to see two cars running side by side in the two lanes on the said Freeway, both going in the same direction; that from the time he first saw the said two moving cars headed east before he left the stop sign until immediately before the collision he "never particularly noticed them" since he was watching the car in front of him, but when he got up into that part of the Freeway leading east, he heard the roar of the moving cars and then looked again and saw the said two moving cars were "right on him"; that when he saw the said cars the second time they were only two or three car lengths from him and were so close to him in the intersection that he got a little excited and put his foot on the accelerator and speeded up a little and got so close to the car in front of him that he turned his steering wheel so as to miss hitting it;

that the car in front of him had then crossed the east bound traffic lanes and had reached the center island which separated the east bound traffic from the west bound traffic, leaving appellant in the north lane of the east bound traffic where the Ethridge Ford car in question collided with his car; that he could not estimate the length of time it took the two cars in question to travel from the point where he first saw them to the point where he saw them the second time near the place of the collision; that as a result of an investigation made he received a city traffic ticket for negligent driving on the occasion in question and thereafter appeared in Lubbock Corporation Court where he paid a fine on the charge made. In addition to the foregoing testimony given by appellant, he likewise gave the following testimony in the form of Q. A.:

"Q. In other words, there were quite a few cars going by out there on that freeway, going both directions, and you and this other driver had to sit back here on Quirt for a good while until you felt that the traffic had cleared out, did you not? A. Yes, sir.

"Q. All right. And, of course, that being a—a main artery there, a freeway, and plus the fact that there was a stop sign over here on Quirt Avenue, you knew that that was a main through thoroughfare there, did you not? A. Yes, sir.

"Q. And, of course, having traveled on the freeway, and having observed all these cars zooming by there, you knew that the speed on that freeway was rather fast, in general, did you not? A. Yes, sir.

"Q. And that the traffic out there was pretty heavy on the freeway? A. Yes, sir." * * *

"Q. And you, of course, were familiar with the fact that the traffic was heavy on that, it was a through free-

way, and cars traveling at a pretty high rate of speed out there? A. Yes, sir."

There were other testimony and circumstances to corroborate that given by appellant. In our opinion there was an abundance of evidence to justify the trial court in submitting Special Issues Nos. 13, 14 and 15 to the jury inquiring about appellant's failure to yield the right-of-way to the Ford car. The law applicable to the facts presented required appellant to yield the right-of-way to traffic on the Freeway so long as there were moving cars on the Freeway such as to constitute an immediate hazard. That appellant failed to do as was conclusively evidenced by the very fact that he entered the intersection in question at a time when the Ethridge car was so close as to constitute an immediate hazard and that a collision occurred between the two cars in the north lane of the Freeway.

■ In support of appellant's requested Special Issues Nos. 5, 5A and 5B he urges the provisions of Section 71(a) and 71(b) of Article 6701d, which apply to an intersection where traffic is not governed by some device which controls traffic such as a stop sign like the one we find existing in the case at bar. In our opinion there were no pleadings or evidence shown in the record of the case at bar to support the submission of requested Special Issues Nos. 5, 5A and 5B and the trial court properly refused to submit them to the jury.

■ Appellant has sought to raise some question about appellees having failed to plead or prove that McKenzie Freeway was a "through highway," but it will be noted that the provisions of Sec. 73(b) of Article 6701d previously herein quoted are applicable to an intersection "although not a part of a through highway." It is likewise a well settled rule of law that a pleader need not set forth the evidence by which he expects to prove his case but only the ultimate facts constituting his claims sought to be established. 33 Tex.Jur. 436, Sec. 22; Andrews v. Daniel, Tex.Civ.App., 240 S.

W.2d 1018; Lange Cable Tool Drilling Co. v. Barnett Petroleum Corp., Tex. Civ.App., 142 S.W.2d 833. Then concerning the point of collision, appellant testified that he was acquainted with the stop sign at the intersection in question and was familiar with the Freeway in question which was "a main thoroughfare" and "a through freeway." In any event if there were any deficiencies in appellees' pleadings or in the evidence presented by them concerning the matters in question here, appellant supplied such deficiencies by his own admissions made in his own pleadings and in his testimony.

■ Appellant charges it was error to submit Special Issues Nos. 1 and 3 to the jury inquiring if appellant failed to keep a proper lookout for other vehicles approaching the said intersection at the time and place in question and if such was a proximate cause of the collision if he did so fail, claiming that there was no evidence to support the submission of such issues or that the evidence was insufficient to support such issues in any event. An examination of all of the evidence heard refutes appellant's claim that there was no evidence to support the submission of such evidence. Appellant's testimony previously herein set out reveals that there was some evidence heard in support of the issues when he testified that he first saw the two cars coming down the slope of the Freeway toward the intersection immediately before he left the stop sign, but he "never particularly noticed them" while he was following and watching the other car only two to six feet ahead of him as they drove that 70 or 80 feet to the edge of the Freeway pavement and then further onto the pavement when he heard the roar of the said cars approaching and then he looked again and saw the said cars were "right on him" immediately after which the Ethridge car collided with his car in the north lane of the Freeway. His own testimony reveals that the issue of lookout was raised and his said testimony was not controverted but it was corroborated in part by that given by Maxine Lindsey who testified that he looked

toward them before he left the stop sign and started to pull into the intersection. In determining appellant's claim of insufficient evidence, if there be evidence of probative value sufficient to support an affirmative jury finding on the said issues, viewing the evidence and circumstances in a light most favorable to such affirmative finding and disregarding all such to the contrary, it was proper to submit the said issues to the jury. In our opinion there was sufficient evidence and particularly that given by appellant himself to support the submission of the said issues complained about as well as the jury's answers thereto. Lynch v. McLendon, Tex.Civ.App., 283 S.W.2d 88, Syl. 3. The trial court gave a definition of the term "proper lookout" and in our opinion appellant, according to his own testimony, failed to observe the movements of the approaching cars on the Freeway from the time he left the stop sign until he moved into the intersection and such failure was not the act of an ordinary prudent person in the exercise of ordinary care under such circumstances.

 Appellant next complains because the trial court submitted Special Issues Nos. 7, 8 and 9 inquiring if appellant failed to apply his brakes to avoid the collision and if such was negligence which proximately caused the collision if he did so fail. The record reveals that appellees pleaded that appellant negligently failed to apply his brakes and the testimony previously herein set out reveals that he did not apply his brakes. Appellant himself testified that he did not apply his brakes but when he saw the two cars approaching him closely he speeded up a little. The officer who appeared immediately after the collision, examined conditions and made a report thereof testified that he found no skid marks where appellant's car had traveled immediately before the collision but found long skid marks made by the Ethridge car. If appellant had looked to the left when he reached the south edge of the Freeway pavement, he would have observed the approaching cars on the Freeway approaching

so closely as to constitute an immediate hazard and he could have then avoided the collision by applying his brakes. According to his own testimony appellant neither looked to his left when he reached the south edge of the pavement nor applied his brakes. It is our opinion that under the record the trial court properly submitted Special Issues Nos. 7, 8 and 9 to the jury which was justified in answering each of them in the affirmative and thus convicting appellant of a third act of negligence which proximately caused the collision.

 We find that the jury convicted appellant of three separate acts of negligence and found that each was a proximate cause of the collision. The said acts of negligence so found by the jury were a failure by appellant to yield the right-of-way to the Ethridge car at the intersection, a failure to keep a proper lookout immediately before the collision and his failure to apply his brakes to avoid the collision. Either one of these sets of findings furnishes a sufficient basis for recovery without the other two if perchance the other two for any reason were not valid but under the record before us we find them all valid.

 Appellant charges error was committed by the trial court in refusing to submit to the jury his requested Special Issues Nos. 2A, 2B, 2C and 2D, inquiring if six persons riding in the Ethridge car at the time of the collision caused an overcrowded condition such as would constitute negligence which proximately caused the collision. The evidence reveals that the Ethridge car was a two-seated Ford car with three teen-age young people riding in the front seat and three teenagers in the back seat. There was no evidence tending to show that such constituted negligence and certainly no evidence even indicating that such was a proximate cause of the collision in any event. It has been held that the presence of four men riding in a Ford Coupe at the time of a collision did not constitute negligence such as prohibited them from recovery. Phoenix Refining Co. v. Walker, Tex.Civ.App., 108 S.W.2d 323.

Appellant complains because the trial court refused to submit to the jury his special requested Issues Nos. 4A, 4B and 4C inquiring if Maxine Lindsey failed to warn Ethridge immediately befor the collision of appellant's entry into the intersection in front of them and if such failure, if any, constituted negligence which proximately caused the collision. We think the refusal of such issues was proper according to the record before us. First, because the trial court in following the language of appellant's pleading submitted such questions in substance in Special Issues Nos. 34, 35 and 36 wherein an inquiry was made asking the jury if Maxine Lindsey failed to complain to Ethridge concerning the perils, if any, that might be occasioned by the method of his driving and if such failure, if any, constituted negligence which proximately caused the collision. The jury answered that Maxine Lindsey did fail to so complain to Ethridge but that such failure was not negligence. Such findings have support in the evidence heard. Then again Maxine Lindsey testified in effect that Ethridge was a good driver who was carefully operating his car at a rate of speed of approximately 50 miles per hour when appellant drove his car into the intersection and into the path of Ethridge's car and that upon seeing appellant's car in his path Ethridge quickly applied his brakes and did all he could to avoid the collision. According to her testimony, there was no occasion for her to have been warning Ethridge about his driving, and under the record presented, Maxine Lindsey did not have time to complain or warn Ethridge of the existing dangers after such became apparent and before the collision occurred which probably caused the jury to answer that she was not negligent in failing to complain to Ethridge. The jury also had a right to believe the testimony of Maxine Lindsey to the effect that Ethridge was a good and careful driver who did all he could to prevent the collision.

Finally appellant charges error was committed because the trial court refused to instruct the jury that the driver of a vehicle on the left shall yield the right-of-way to the driver on the right when they are both approaching an intersection as provided for in Sec. 71(b) of Art. 6701d. Under the record before us the provisions of Sec. 73(b) of Art. 6701d previously herein quoted were applicable because the traffic at the intersection in question was governed by a stop sign on Quirt Avenue, consequently the provisions of Sec. 71(b) of Art. 6701d do not apply in the case at bar. Therefore it is our opinion that the trial court correctly refused to give the said instructions requested by appellant.

For the reasons stated, appellant's points of error are all overruled and the judgment of the trial court is affirmed.

On Motion for Rehearing.

PER CURIAM.

Our original opinion and judgment of affirmance in this case were dated and handed down on February 16, 1959. Rule 458, Texas Rules of Civil Procedure, allows either party 15 days in which to file in this Court a motion for rehearing. A computation of that time under Rule 4, T.R.C.P., discloses that the 15-day period in this case expired on March 3, 1959.

Appellant, Robert Lee Wilkinson, has sent to the Clerk of this Court, through the United States mail and requested its filing, a motion for rehearing in the said cause. The envelope in which the enclosure was received shows a postmark of: "Lubbock, Tex. Mar. 3, 2:30 P.M., 1959" and the same was received through the United States mail by the Clerk of this Court on March 4, 1959. Obviously, the request for filing the motion for rehearing reached the Clerk of this Court too late for filing.

Since appellant's motion for rehearing was not tendered for filing by March 3, 1959, or was not deposited in the mail in time for the envelope carrying it to have

been postmarked "one day or more before the last day for filing same," as required by the provisions of Rule 5, T.R.C.P. as amended by order effective March 1, 1950, we have no option but to deny appellant's right to have his motion for rehearing filed or considered by us. We have no authority to enlarge or extend the time for filing such motion under the circumstances and rules cited. Thomas v. Thomas, Tex.Civ. App., 228 S.W.2d 548, 552; Dennis v. Galbreth, Tex.Civ.App., 228 S.W.2d 579, 582; Phillips v. Reese, Tex.Civ.App., 256 S.W.2d 162, 166; Davis v. Brotherhood of Ry. Carmen of America, Tex.Civ.App., 272 S.W.2d 938.