James L. EDDLEMAN et al., Appellants,

v.

Stephen SCALCO et al., Appellees.

No. 7358.

Court of Civil Appeals of Texas,
Beaumont.

June 29, 1972.

Rehearing Denied Aug. 31, 1972.

Waldman, Smallwood, Johnson & Rafes,
Beaumont, W. James Kronzer, Houston,
for appellants.

Rienstra, Rienstra & Dowell, Beaumont, for appellees.

DIES, Chief Justice.

For some years, Victor Scalco, a Port Arthur produce dealer, had ripened bananas with acetylene gas. This was accomplished by placing boxes of unripened bananas in a closed refrigerator cooler and mixing calcium carbide with water which then gave off the acetylene gas. On August 3, 1967, Scalco, his son, and Alfred Alexander placed seventy-five to one hundred boxes of unripened bananas in a cooler and then mixed the calcium carbide with water and closed the heavy door of the cooler. At approximately 1:30 p. m., about one minute after closing the door, an explosion occurred in the cooler which killed Scalco and Estella Loretta Eddleman and injured Alfred Alexander and Charles Ray Dixon.

A consolidated suit against Stephen Scalco, d/b/a Scalco Produce, Inc., Union Carbide Company and Robert Diamond was filed for injuries on behalf of Alfred Alexander, a minor, and Charles Ray Dixon, a minor; and by the parents of Estella Loretta Eddleman for wrongful death. Plaintiffs alleged: That the calcium carbide chemical was manufactured by defendant, Union Carbide, and sold to Victor Scalco by defendant, hardware dealer Robert Diamond. That plaintiffs Alexander and Dixon were employed by Stephen Scalco, brother of the deceased, Victor Scalco, who was likewise engaged in the produce business on the same premises. It was alleged that while defendant, Scalco, was subject to the Workmen's Compensation Law of Texas, he was not a subscriber.

In the trial of the case, defendant Diamond was dismissed. Various, allegations of negligence were asserted against the defendants. For the purpose of this appeal, we need only consider those allegations against Union Carbide. Union Carbide was accused, among other allegations, of failing to adequately warn of the potential danger caused by the mixing of calcium carbide and water; in failing to warn that acetylene gas is formed by mixing calcium carbide with water; and in failing to adequately warn that "improper mixing of calcium carbide with water would be explosive."

Trial was had to a jury which found: That the explosion was proximately caused by acetylene which was generated by the mixing of water and calcium carbide in the cooler. That the chemical was manufactured by Union Carbide. That Victor Scalco continued to ripen bananas in this manner after having been warned against it which was the sole cause of the accident as was his act in mixing calcium carbide with water in a closed space. That the explosion was not an unavoidable accident. They failed to find that before the accident Victor Scalco "failed to give a proper warning that he was going to mix calcium carbide and water."

The following issue and its answer were made:

"If you have answered Special Issue No. 3 'Yes' [i. e., that the calcium carbide was manufactured by Union Carbide Company], then answer the following Special Issue.

"SPECIAL ISSUE NO. 4

"Do you find from a preponderance of the evidence that the container of such calcium carbide used on the occurrence in question warned of the danger of explosion from mixing calcium carbide with water?

"Answer 'Yes' or 'No'

"Answer No"

Following the jury verdict, the trial court entered judgment that plaintiffs "do have and recover nothing of and from the Defendant, Union Carbide Corporation" from which plaintiffs have perfected this

appeal. The parties will be referred to as they were below.

The only error assigned is the refusal of the court to submit issues inquiring if Union Carbide Company failed to warn of the danger of explosion from mixing calcium carbide and water, whether this constituted negligence, and whether such negligence was a proximate cause of the explosion.

The evidence revealed that the container of the chemical had the following warning on it:

"WARNING—KEEP DRY—FLAMMABLE GAS FORMS IF CONTENTS BECOME WET—HARMFUL IF SWALLOWED—KEEP OUT OF REACH OF CHILDREN. 100 POUNDS."

Defendant contends that the court was correct in refusing to submit the requested issues because this is merely a "shade or phase" of Special Issue No. 4 (set out above) and not supported by pleadings.

■ *Rule 279*, Texas Rules of Civil Procedure excuses the trial court's failure to submit requested issues only "[w]here the court has [already] fairly submitted the controlling issues raised by such pleading and the evidence." Issue No. 4 did not submit plaintiffs' theory of failure to warn of explosion for two reasons: First, the burden of proof is incorrectly placed so that the jury finding amounts only to its failure to find that the container warned of the danger of explosion from mixing calcium carbide with water. And secondly, no issues of negligence or proximate cause were submitted. It is only fair to note that defendant's attorney pointed these out in his objections to the charge. We think the pleadings as set forth earlier herein were adequate to raise the issues.

The more serious question is whether this theory was raised by the evidence. Defendant argues that the warning on the container concerning flammability is the same as explosiveness and that plaintiffs' own evidence shows that an explosion is simply an accelerated flame.

■ It is only those controlling issues made by the evidence which the court must submit. Rule 279; Gilbert v. Haigler, 363 S.W.2d 337, 339 (Tex.Civ.App., Houston, 1962, error ref. n. r. e.); Wilkinson v. Lindsey, 321 S.W.2d 158, 162 (Tex.Civ. App., Amarillo, 1959, no writ); Goldman v. Campbell, 249 S.W.2d 633, 635 (Tex.Civ. App., Fort Worth, 1952, error ref. n. r. e.); Wichita Transit Co. v. Sanders, 214 S.W. 2d 810, 813 (Tex.Civ.App., Fort Worth, 1948, no writ); Chesshir v. Nall, 218 S.W. 2d 248, 254 (Tex.Civ.App., Amarillo, 1949, error ref. n. r. e.); Green v. Ligon, 190 S.W.2d 742, 749 (Tex.Civ.App., Fort Worth, 1945, error ref. n. r. e.); Kiel v. Mahan, 214 S.W.2d 865, 867 (Tex.Civ.App., Fort Worth, 1948, error ref. n. r. e.); Parker v. Gulf, Colorado & Santa Fe Railway Co., 401 S.W.2d 265, 267 (Tex. Civ.App., Tyler, 1966, no writ); Leatherwood Drilling Co. v. TXL Oil Corporation, 379 S.W.2d 693, 696 (Tex.Civ.App., Dallas, 1964, error ref. n. r. e.); and Powell v. Powell, 378 S.W.2d 943, 945 (Tex.Civ.App., Beaumont, 1964, no writ).

On the other hand, if there be evidence of probative value sufficient to support affirmative jury findings on such issues, viewing the evidence and circumstances in the light most favorable to such affirmative findings and disregarding all such to the contrary, the issues should be submitted. Wilkinson v. Lindsey, supra (321 S.W.2d at p. 165). This is so even though a court of appeals would have to set aside findings which were based upon evidence requiring submission. Norvell Service Company v. Spell, 288 S.W.2d 133 (Tex.Civ. App., Beaumont, 1955, error ref. n. r. e.). See also Cox v. Rhodes, 233 S.W.2d 924 (Tex.Civ.App., El Paso, 1950, no writ); Johnson v. Karam, 466 S.W.2d 806 (Tex. Civ.App., El Paso, 1971, error ref. n. r. e.); Sharp v. Chrysler Corporation, 432 S.W.2d 131 (Tex.Civ.App., Houston–14th, 1968, error ref. n. r. e.); and Hanks v. LaQuey,

425 S.W.2d 396 (Tex.Civ.App., Austin, 1968, error ref. n. r. e.).

We examine the evidence in the light of these directives. Plaintiff called Dr. Ewin A. Eads, a professor of chemistry at Lamar University in Beaumont. He has a Masters Degree in chemistry and a PHD from Tulane University of New Orleans in inorganic chemistry. Dr. Eads testified that calcium carbide when mixed with water produces a compound known as acetylene, which is principally used in this country for cutting steel along with pure oxygen. It has also been used to ripen fruit, i. e. "certain fruit is ripened, or turns yellow, whether it actually ripens or not, it's questionable, but the color of the fruit turns yellow." Dr. Eads stated that bananas are one of the fruits that so react. He then went on to say that when calcium carbide is mixed with water, along with the production of acetylene, calcium hydroxide is produced which is very sensitive to volume changes by which he meant that "if you have a mixture of this gas with air, let's say, and you release the pressure at least a tenth to three-tenths of an atmosphere, the gas will decompose and *explode*. [emphasis supplied] It doesn't require a spark, due to its high heat of formation or low heat of formation a minus 50.4 kilograms calories per mole. It's a tricky molecule . . . In other words, if you put it in a cylinder naked, with nothing in there, it will explode, just simply by change of pressure." After some equivocation, in response to a hypothetical question, Dr. Eads testified it was his opinion, based on reasonable probability, that what happened was an explosion of the acetylene.

He was then asked:

"Q. What is the difference between a substance that is flammable and a substance that is explosive?

"A. An explosion is simply an accelerated flame. In other words, it is an uncontrolled flammable occasion. In other words, when you look at, the example, an automobile engine or some other example, once the detonation has started, you can't control it. One is rapid and one is slow and controlled. In other words, a flame, we think of, as being a slower, much less flame velocity than an explosion. An explosion has a high flame velocity. It's the difference in flame velocity, in other words.

"Q. Well, you take the substances such as methane or gasoline—certain mixtures with oxygen, they are explosive, aren't they?

"A. Yes, sir.

"Q. What is the difference that makes —what is it that makes it explosive?

"A. It's the uncontrolled carburation that makes them sometimes lethal, whereas sometimes when the carburation of the adjustment of these things are used, they are very useful.

"Q. All right now, such substances, like methane or gasoline or mixtures of oxygen, the mixtures themselves, they have to have a detonating agent, do they not?

"A. They have to have a spark.

"Q. Now, does a mixture under proper conditions, favorable conditions, where you have calcium carbide mixed with water which you have said produces acetylene gas, does that have to have an igniting agent?

"A. No, sir.

"Q. What is it about the properties of acetylene, would you explain to the Jury, that causes it to ignite itself?

"A. Because of the high innerthermic heat formation from the molecule. In other words, in terms of explaining to my freshman, I say it has a great strain within the molecule and is easily touched off, like any slight change, such as volume or ignition or even compression, just any little change will set the strain in motion and it will generate from this heat formation, this high stored heat will be released all of a sudden.

"Q. Now, when calcium carbide is mixed with water, as you have testified, it produces acetylene, that's correct, isn't it?

"A. Yes, sir.

"Q. Now, when that reaction is within a closed container such as this cooler, will the production of the gas cause changes of pressure?

"A. Yes, it will.

"Q. And this is essentially what you have said happened?

"A. Yes, sir, it is.

"Q. Now, the reaction between the calcium carbide and water, when you have that reaction, does the water heat up or do you have a heating reaction there?

"A. Water is used in the chemical reaction, part of the molecule of water comes off, it forms a part of the molecule of acetylene. The other part goes to form calcium hydroxide, so the heat of reaction is present too, the dynamics of the reaction are present too, so to speak.

"Q. These properties about the formation of acetylene that you have described to the Jury, and with particular reference to the change in volume under pressure and the instability of that molecule, have they been known in the field of chemistry for a few or many, many years?

"A. Have been known for as long as welding has been popular, and that has been for at least sixty-five years."

So far as we have been cited or have found independently, there is only one case involving this precise situation—a California case. Crane v. Sears Roebuck & Co., 218 Cal.App.2d 855, 32 Cal.Rptr. 754 (4th Dist. 1963). There plaintiff purchased surface preparer for paint which warned: "'CAUTION: INFLAMMABLE MIXTURE. Do not use near fire or flame. Contains more than 15% Benzol. BE- WARE OF POISONOUS FUMES.'" There was evidence of injury due to explosion. The court held that whether the label gave appropriate warning was a fact question.

The case of Rumsey v. Freeway Manor Minimax, 423 S.W.2d 387 (Tex.Civ.App., Houston–1st, 1968, no writ), is interesting and well written. Mrs. Rumsey purchased a one-ounce bottle of "Echols Kingtex" to be used as an insecticide. The label gave as an antidote to thallium which was contained in the insecticide salt in water to induce vomiting. Her child swallowed some of the insecticide and later died. Evidence was given that there is no known antidote for thallium, a fact which was not on the label, which became the basis of alleged negligence. In reversing the trial court's instructed verdict for defendant, the court said:

"There is a common law duty on one who markets an inherently dangerous product to fully disclose the extent of the danger in its use and to disclose the measures that may be taken to avoid fatal consequences of its use."

American Law Institute's Restatement of the Law of Torts, § 388 (2d Ed. 1965), says:

"One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

\* \* \* \* \* \*

"(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."

From the testimony of Dr. Eads, we think the jury could have concluded that the accident in question resulted from an

explosion of acetylene gas. Likewise, we believe the difference in degree to a lay mind between "explosive", "combustible" and "flammable" certainly could cause disuse of this chemical in the fashion used herein. At any rate, this was plaintiff's theory and since it was clearly raised by the evidence, it should have been submitted to the jury.

Reversed and remanded.