In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00157-CR
______________________________


ELZIE LILLY, III, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 30141-B


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â Elzie Lilly, III, appeals from his conviction, on his plea of guilty without a plea agreement,
to the offense of delivery of cocaine in an amount less than one gram. A jury assessed his
punishment at 180 days' confinement in a state jail facility. Lilly also has a pending appeal in a
companion case, in which he pled guilty to delivery of cocaine in an amount between one and four
grams, and was sentenced to nine years' imprisonment. The two cases were tried together, and he
has raised the same contention of error in each appeal.


 
Â Â Â Â Â Â Â Â Â Â Â Â In his single contention of error, Lilly argues he received ineffective assistance of counsel
at trial. The standard of testing claims of ineffective assistance of counsel is set out in Strickland
v. Washington, 466 U.S. 668 (1984). To prevail, an appellant must prove by a preponderance of the
evidence (1) that his or her counsel's representation fell below an objective standard of
reasonableness and (2) that the deficient performance prejudiced his or her defense. Id.; Rosales
v. State, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999). To meet this burden, the appellant must prove
that the attorney's representation fell below the standard of prevailing professional norms and that
there is a reasonable probability that, but for the attorney's deficiency, the result of the trial would
have been different. Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). In so doing, the
appellant must prove that counsel's representation so undermined the proper functioning of the
adversarial process that the trial cannot be relied on as having produced a just result. Strickland, 466
U.S. at 686. 
Â Â Â Â Â Â Â Â Â Â Â Â Our review of counsel's representation is highly deferential, and we indulge a strong
presumption that counsel's conduct falls within a wide range of reasonable representation. Id. at 689;
Tong, 25 S.W.3d at 712. This Court will not second-guess through hindsight the strategy of counsel
at trial, nor will the fact that another attorney might have pursued a different course support a finding
of ineffectiveness. Blott v. State, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979). That another
attorney, including appellant's counsel on appeal, might have pursued a different course of action
does not necessarily indicate ineffective assistance. Harner v. State, 997 S.W.2d 695, 704 (Tex.
App.âTexarkana 1999, no pet.). Any allegation of ineffectiveness must be firmly founded in the
record, and the record must affirmatively demonstrate the alleged ineffectiveness. Thompson v.
State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).
Â Â Â Â Â Â Â Â Â Â Â Â When ineffective assistance is raised on direct appeal, appellate counsel and the court must
proceed on a trial record not developed for the object of litigating or preserving the claim and thus
often incomplete or inadequate for this purpose. Freeman v. State, No. 2156-01, 2003 Tex. Crim.
App. LEXIS 711 (Tex. Crim. App. Nov. 5, 2003). Some claims may be disposed of on direct appeal
where "trial counsel's ineffectiveness is so apparent from the record." Massaro v. United States, ___
U.S. ___, 123 S.Ct. 1690, 1694 (2003); Freeman, 2003 Tex. Crim. App. LEXIS 711, at *3. Such
situations are quite rare, however. See Freeman, 2003 Tex. Crim. App. LEXIS 711, at *3. 
Â Â Â Â Â Â Â Â Â Â Â Â Appellate counsel contends trial counsel was ineffective because he (1) did not object to a
defective indictment, (2) filed defective defensive pleadings, (3) allowed the cases to be consolidated
for punishment when the available punishments were in conflict, (4) did not object to extraneous
offenses and bad reputation testimony, and (5) allowed Lilly to testify about his eligibility for
community supervision.
Â Â Â Â Â Â Â Â Â Â Â Â In appeal number 06-03-00157-CR, the indictment was, in fact, defective. It alleged Lilly
had delivered "cocaine , in an amount of less than one ," [sic]. This is sloppy work on the part of the
State, but where actual notice exists, such an error is not fatal. The rule is that a defendant has a
constitutional right to sufficient notice so as to enable him or her to prepare a defense. However, this
due process requirement may be satisfied by means other than the language in the charging
instrument. Kellar v. State, 108 S.W.3d 311, 313 (Tex. Crim. App. 2003). There is some indication 
counsel was aware of the charge being pursued by the State, and nothing to reflect otherwise. In
such a situation, although counsel could have successfully complained about the indictment, there
would be no point in doing so. We will not find counsel constitutionally ineffective under those
circumstances. 
Â Â Â Â Â Â Â Â Â Â Â Â Lilly next argues trial counsel was ineffective because he filed defective defensive pleadings.
Specifically, trial counsel filed an application for community supervision in which he stated that
Lilly was charged with "the offense of Forgery Financial Instrument." Lilly was not charged with
that crime. Presumably, this is a result of an inadequate updating of a form pleading. However, the
record also shows that a correct motion for community supervision was filed two weeks later 
correctly setting out the charged offense. Thus, even though defense counsel was also guilty of
sloppy editing, the error was corrected. 
Â Â Â Â Â Â Â Â Â Â Â Â Lilly next contends counsel was ineffective because he allowed two cases with differing
punishment ranges to be consolidated. Counsel's reasoning on appeal lies in the fact that, under Tex.
Code Crim. Proc. Ann. art. 42.12, Â§Â§ 3(e)(2), 4(d)(2), 15 (Vernon Supp. 2004), a person convicted
of a state jail felony may be able to obtain community supervision from a judge, but cannot seek it
if a jury assesses punishment. See Anderer v. State, 47 S.W.3d 60 (Tex. App.âHouston [14th Dist.]
2001, pet. ref'd). Thus, if Lilly was found not guilty of the felony, but guilty of the state jail felony,
incarceration would be the only option when the jury assessed punishment.
Â Â Â Â Â Â Â Â Â Â Â Â This analysis by appellate counsel is correct. However, application places trial counsel in
a conundrum with no easy answer, because if the cases had been tried separately, and if convicted
of both, Lilly would then face the unpalatable possibility of having two sentences stacked. See Tex.
Code Crim. Proc. Ann. art. 42.08 (Vernon Supp. 2004); Tex. Pen. Code Ann. Â§ 3.03 (Vernon
2003). In light of the fact that this proceeding involved a guilty plea before the jury to both charges,
we cannot agree counsel was ineffective in this respect. 
Â Â Â Â Â Â Â Â Â Â Â Â Lilly next argues that counsel was ineffective because he did not object to extraneous
offenses Â and Â bad Â reputation Â testimony. Â However, Â under Â Tex. Â Code Â Crim. Â Proc. Â Ann. Â art.
37.07, Â§ 3(a)(1) (Vernon Supp. 2004), such evidence is admissible during the punishment phase, and
it is not apparent that any objections would have had any positive effect. Thus, error has not been
shown in this regard. We know we must defer to counsel's decisions as far as strategic or tactical
reasons for his action or inaction. In the absence of direct evidence of counsel's reasons for the
challenged conduct, we are to assume a strategic motivation if any can be imagined. Garcia v. State,
57 S.W.3d 436, 441 (Tex. Crim. App. 2001). We will not conclude the challenged conduct
constitutes deficient performance unless the conduct was so outrageous that no competent attorney
would have engaged in it. Id.; see Thompson, 9 S.W.3d at 814. In the absence of more information
than is presently available, we cannot conclude counsel acted inappropriately by failing to object to
the reputation testimony or the testimony about bad acts of the defendant. 
Â Â Â Â Â Â Â Â Â Â Â Â Lilly finally argues counsel was ineffective because he allowed Lilly to testify about his
eligibility for community supervision. We cannot conclude Lilly was necessarily less believable or
effective from this vantage point, without something more in the record to support that position, nor
could we conclude counsel was ineffective for failing to bring his own "good" reputation witnesses
in the absence of some showing in the record that such was available. Under the record before us,
we cannot conclude error has been shown.
Â Â Â Â Â Â Â Â Â Â Â Â The contention of error is overruled.
Â 
Â 
Â 
Â Â Â Â Â Â Â Â Â Â Â Â We affirm the judgment.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â December 5, 2003
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â December 8, 2003

Do Not Publish































008, no
pet. ). "Among the obligations of the fiduciary are (1) the duty of the loyalty, (2) the duty to make
a full disclosure, and (3) the duty to exercise a high degree of care to conserve the money and pay
it only to those persons entitled to receive it." Zimmerman v. First Am. Title Ins. Co., 790 S.W.2d
690, 695 (Tex. App.--Tyler 1990, writ denied). To the extent UST was employed only to close a
transaction in accordance with a contract already entered into by the parties, "it is not apparent how
the agent's duty of disclosure could extend beyond matters affecting the parties' rights in the closing
process to those concerning the merits of the underlying transaction" concerning title. Home Loan
Corp. v. Tex. Am. Title Co., 191 S.W.3d 728, 733-34 (Tex. App.--Houston [14th Dist.] 2006, pet.
denied). An escrow agent has no "independent duty to determine the correctness of [documentation]
provided by a title company." Holder-McDonald v. Chicago Title Ins. Co., 188 S.W.3d 244, 248
(Tex. App.--Dallas 2006, pet. denied) (attachment of incorrect legal description of property not
actionable against title company escrow agent absent knowledge of defect); Chicago Title Ins. Co.
v. Alford, 3 S.W.3d 164, 167-68 (Tex. App.--Eastland 1999, pet. denied). 

 Thus, the trial court properly granted summary judgment on the Shoalmires' fraud claims,
because the Shoalmires produced no evidence of misrepresentation and because UST, as an escrow
agent, had no duty that any summary-judgment evidence suggested was violated. We also conclude
that UST did not have a duty other than the duties assigned to it as an escrow agent, such that the
Shoalmires' claims for fraud in the inducement and fraud in real estate transaction claims under
Section 27.01 of the Texas Business and Commerce Code were also properly disposed of by
summary judgment. (7) Tex. Bus. & Com. Code Ann. § 27.01 (Vernon 2009).

(3) Summary Judgment Was Proper on the Shoalmires' Claims Against UST for Negligence

 The Shoalmires argue that UST breached the "duty to use ordinary care in making
representations of fact." Again, there is no evidence of a misrepresentation by UST. Also, because
UST's duties of reasonable care extended only to its status as escrow agent, and there is neither a 
claim nor evidence of any breach of duty as to those limited responsibilities, the Shoalmires'
negligence claim was properly disposed of by summary judgment.




(4) Summary Judgment Was Proper on the Shoalmires' Claims Against UST for Breach of a
Duty of Good Faith and Fair Dealing

 The claim that UST breached a duty of good faith and fair dealing with the Shoalmires, in
wrongfully denying payment under the title policy, was not supported by any evidence. Evidence
demonstrated that UST did not issue the title policy or have any obligation to pay under it. We affirm the trial court's summary judgment against the Shoalmires.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: November 23, 2009

Date Decided: January 26, 2010


1. In a document called "Information About On-Site Sewer Facility," the Greers listed the
home as a single-family dwelling and did not mark on the form that the home was a mobile home,
although the option was provided. 
2. The Home Protection Plan documentation by Century 21 listed the home as a single-family
home as of the date of closing. 
3. An Advisory Notice Agreement purporting to contain the Shoalmires' initials states that
Century 21 has "not offered to perform any other services" other than marketing the real estate, that
they are "not qualified to render an opinion regarding the structural condition or functionality of
buildings or other improvements to the property," that the Shoalmires "understand we should not
to [sic] rely on comments or representations made by any Licenced Broker or Salesman associated
with Century 21" related to these matters. They also signed the Final Inspection and Acceptance of
Property Condition stating "[w]e have personally performed a final inspection of property condition
on 5/25/05 and find it to be in acceptable condition."
4. Claims of breach of fiduciary duty were later withdrawn by the Shoalmires. 
5. The Shoalmires cite no cases supporting the proposition that these facts raised issues of
unconscionability by UST.
6. The Shoalmires also argue that UST's website 


 indicates that [UST] would help pass marketable title because "[i]n today's
complicated world, property owners need title protection more than ever. A deed to
a piece of property does not necessarily prove that the seller is the owner of the
property and errors in clerical work could endanger a person's legal title to his land." 

 

There is no evidence in the record suggesting the Shoalmires ever viewed the website before closing,
if at all. Thus, there is no evidence they relied on the website. Also, the website quote does not alter
UST's duty as a simple escrow agent. 
7. UST also argues that the Shoalmires' renewing their interim loan with BancorpSouth waived
any claims, both by virtue of the act of renewal itself and by virtue of release language in the renewal
paperwork. In B & R Development, Inc. v. Rogers, we acknowledged that a party's fraud cause of
action is barred or waived as a matter of law if, after they discover a deficiency and have full
knowledge of it, they renegotiate the transaction and execute renewal notes. 561 S.W.2d 639, 641
(Tex. App.--Texarkana 1978, writ ref'd n.r.e.). Specifically, we stated where "one with knowledge
of a fraud perpetrated on him in a prior transaction executed a renewal of his obligation, he thereby
ratifies the original transaction and will not be permitted to plead fraud." Id. at 642. This rule
applies to "actions for damages or to recover consideration paid for property purchased as a result
of fraudulent misrepresentation." Id. The reasoning behind the rule is that fraud has been eliminated
from the transaction where it has been renegotiated after discovery. Id. at 643. We would
distinguish Rogers from the instant case because the claims here being considered are not those
leveled at BancorpSouth, but at UST. We question whether renewal of a loan would release any
obligations of other parties to the earlier transaction.

 The loan renewal contained a provision whereby the Shoalmires released BancorpSouth and
its agents "from any and all claims, demands, actions and causes of action of any and every kind or
character . . . arising out of or with respect to any and all transaction relating to the Note and Security
Instruments occurring prior to [July 24, 2006]." UST argues that it is undisputed that it acted as
BancorpSouth's agent during closing. Releases are subject to the rules of construction governing
contracts in general, and we will not rewrite agreements to insert provisions parties could have
included or to imply restraints for which they have not bargained. Tenneco, Inc. v. Enter. Prods. Co.,
925 S.W.2d 640, 646 (Tex. 1996); Stafford v. Allstate Life Ins. Co., 175 S.W.3d 537, 542 (Tex.
App.--Texarkana 2005, no pet.). We are to carry out the true intentions of the parties as expressed
in the written instrument. Lenape Res. Corp. v. Tenn. Gas Pipeline Co., 925 S.W.2d 565, 574 (Tex.
1996). We give the contract its plain grammatical meaning, unless doing so would defeat the parties'
intent. DeWitt County Elec. Coop., Inc. v. Parks, 1 S.W.3d 96, 101 (Tex. 1999). Because of our
other rulings in this case, we are not required to decide whether this release language released UST. 
However, we question whether the release language was broad enough to cover previous acts of
parties to this transaction other than the bank and its employees and agents involved specifically in
the financing.